CATHERINE MULROY, Plaintiff in Error, v. SUPREME LODGE OF THE KNIGHTS OF HONOR, Defendant in Error.

St. Louis Court of Appeals, January 3, 1888.

1. BENEVOLENT ASSOCIATION—PROOF OF DEATH—SURRENDER OF CERTIFICATE.—In a suit for death benefits against a benevolent association, the defendant cannot object, on appeal, that there was no proof of the death of the member, and no surrender of the certificate, as required by its terms, when the death was admitted and the certificate produced at the trial, and the defence proceeded on other grounds.

2. ——— MEMBERSHIP IN GOOD STANDING—BURDEN OF PROOF.—The benefit certificate is *prima-facie* evidence of the member's good standing at and after the time when it was issued; and the burden of proof is on the defendant to show that the member had lost such standing at the time of his death.

3. ——— ASSESSMENTS—NOTICE.—Where the laws of an association require notices to be given of assessments, a member cannot forfeit any rights by the non-payment of an assessment whereof he had not due notice.

4. ——— REMEDY WITHIN ITS JURISDICTION.—The duty of an expelled member to exhaust, by appeal or otherwise, all the remedies within the organization, arises only where the association is acting strictly within the scope of its powers.

5. ——— POWER OF EXPULSION.— Whatever may be the inherent power of a benevolent corporation to expel a member for causes injurious to the society, or subversive of its good standing and usefulness, this does not include a power to expel for the utterance of false and malicious accusations against another member. Mutual benefit associations are founded in contract, and have no power of expulsion which is not clearly conferred by the constitution or charter, or by the laws of the state.

APPEAL from the St. Louis Circuit Court, HON. DANIEL DILLON, Judge.

*Reversed and remanded.*

LOUIS A. STEBER, for the plaintiff in error: With the introduction of the benefit certificate issued and de-

livered to James Mulroy by defendant, proof of the signatures and official character of the signers thereto, proof of Mulroy's death, and proof that plaintiff is his widow, and the beneficiary named in the benefit certificate, plaintiff made out a *prima-facie* case. *Supreme Lodge v. Johnson*, 78 Ind. 110; *Lazensky v. Knights of Honor*, 31 Fed. Rep. 592, 594. Forfeitures are not favored in law, and the courts look with extreme reluctance on any proceedings towards this end. Dill. Mun. Corp. (3 Ed.) secs. 345, 346. The interest of the deceased and of his beneficiary, the plaintiff, in the beneficiary certificate, is a pecuniary interest, of which neither can be deprived without due process of law. *State v. Odd Fellows*, 8 Mo. App. 148, 154; *Commonwealth v. St. Patrick's Society*, 2 Binn. 441; *People v. Medical Society*, 24 Barb. 570, 577; *Medical Society v. Weatherly*, 75 Ala. 248, 253. In the absence of any proof of power to expel a member, defendant's power to do so will be treated as denied. Wood on Nuis. (2 Ed.) p. 820, sec. 742. It is not within the power of corporations to create judicial tribunals for the final and conclusive settlement of controversies. To create a judicial tribunal is one of the functions of sovereign power. *Bauer v. Sansom Lodge*, 102 Ind. 262, 269; *Austin v. Searing*, 16 N. Y. 112, 123. No power of expulsion is granted in the corporation laws of Missouri in such cases as this. Rev. Stat., sec. 980. Defendant's by-laws on the power of expulsion are unreasonable, and, therefore, void. *State ex rel. v. Merchants' Exchange*, 2 Mo. App. 96; *State ex rel. v. Chamber of Commerce*, 20 Wis. 63; *People v. Medical Society*, 24 Barb. 570, 578; *Medical Society v. Weatherly*, 75 Ala. 248, 256. Even if the corporation could show its power to expel a member, such power would be only a delegated power from the state, whose creature it is. It would have to exercise such a power directly, and it could not delegate it again to a third party or a subordinate agency. *Delegatus non potest delegare*, is a favored maxim of the law. *State ex rel. v. Chamber of Commerce*, 20 Wis. 63; *Medical Society v. Weatherly*, 75 Ala.

248, 259–60. The record and proof failing to show that this lodge, as a court, acquired any jurisdiction in the premises, its proceedings are void. *Bersch v. Schneider*, 27 Mo. 101; *France v. Evans*, 90 Mo. 74; *State v. Police Com'rs*, 14 Mo. App. 310. The fact that Mulroy never tendered any money for assessments in 1885 is immaterial. The burden of proof is on the defendant, to show that assessments were made and that notice thereof was given, under its laws, to Mulroy. *Agnew v. A. O. U. W.*, 17 Mo. App. 254; *Siebert v. Chosen Friends*, 23 Mo. App. 268; *Hall v. Knights of Honor*, 24 Fed. Rep. 450. Where there is no jurisdiction there is no judgment. A pretended judgment in such a case is a nullity. *Bersch v. Schneider*, 27 Mo. 101; *France v. Evans*, 90 Mo. 74; *Hall v. Knights of Honor*, 24 Fed. Rep. 450. From a void judgment there is no obligation to appeal. It is void in all courts and in all places. *Hall v. Knights of Honor*, 24 Fed. Rep. 450; Freeman on Judg. (3 Ed.) sec. 117. Mulroy's failure to appeal from this void judgment, even if he knew of it, does not bind plaintiff. *Lazensky v. Knights of Honor*, 31 Fed. Rep. 592, 595.

WILLIAM C. & JAMES C. JONES, for the defendant in error: The question at issue is not, was Mulroy legally expelled? But it is, was he in good standing? If he was illegally expelled, he had his remedy during his lifetime. He could have appealed to the higher tribunals which existed, as is shown by the constitution and by-laws offered in evidence by the defence. But having failed to do this, the judgment expelling him is conclusive. *Karcher v. Supreme Lodge Knights of Honor*, 137 Mass. 168; *Grosvenor v. United Society of Believers*, 118 Mass. 178; *Dolan v. Court Good Samaritan*, 128 Mass. 437. In the case of *Chamberlain v. Lincoln* (129 Mass. 70) the court holds that before members of a lodge can even apply to a court of equity for relief, they must exhaust their right of appeal to the higher tribunals, provided by the rules and regulations of the order. *Laford v. Deems*, 81 N.

Y. 507; *Robinson v. Yates City Lodge*, 86 Ill. 598; *People v. Board of Trade*, 80 Ill. 134; *Harrington v. The Workingmen's Benevolent Association*, 70 Ga. 342; *White v. Brownell*, 2 Daly, 329; *Dolan v. Court Good Samaritan*, 128 Mass. 439. "Stringent as are the rules in ordinary life insurance policies they should be more rigidly applied in mutual associations." *Osceola Tribe v. Schmidt*, 57 Md. 103; *VanDyke's case*, 2 Wharton, 312; *Toram v. The Howard Ben. Ass'n*, 4 Pa. St. 519; Bliss on Ins., sec. 426, p. 765.

THOMPSON, J., delivered the opinion of the court.

This action is brought to recover the sum of two thousand dollars, alleged to be due from the defendant to the plaintiff by reason of a benefit certificate issued by the defendant to James Mulroy, the late husband of the plaintiff, in which the plaintiff was named as the beneficiary. The answer is a general denial. At the trial the plaintiff put in evidence the benefit certificate. The official character of the signers thereof and their signatures were admitted by the defendant. The defendant also admitted the death of James C. Mulroy and that the plaintiff is his widow. There was a trial by the court sitting as a jury, a finding for the defendant, a motion by the plaintiff for judgment *non obstante veredicto*, an overruling of this motion, and a judgment for the defendant, from which the plaintiff prosecutes this writ of error. The death of James Mulroy took place on the sixteenth of December, 1885.

The defendant proceeded, by reading from the records of the subordinate lodge of which the deceased was a member, and by parol testimony, to show that he had been, on the tenth day of November, 1884, expelled from the lodge upon a trial upon a charge of uttering false and malicious charges against a member of the lodge; which date, it is perceived, was more than thirteen months prior to his death. It is not pretended that he paid any assessments subsequently to such expulsion, nor is there any evidence that he was ever notified to

pay any. According to the language of the certificate, the obligation of the defendant to pay the sum of two thousand dollars to Catherine Mulroy, wife of James Mulroy, is conditioned "upon satisfactory evidence of the death of said member and the surrender of this certificate;" and is also upon condition, among other things, "that said member complies with the laws, rules, and regulations now governing this order, or that may hereafter be enacted for its government, and is in good standing at the time of his death."

We may lay out of view the objections made by the defendant, now for the first time in this court, that the plaintiff has made no proof of death, and has not surrendered the certificate, as therein required. This is not necessary where the defendant admits the death and denies its liability upon other grounds, and where the certificate is itself put in evidence and surrendered in court in an action upon it, and even embodied in the record to be sent up on writ of error, as in this case. By contesting its liability under a general denial, upon the sole ground that the deceased was not a member in good standing at the time of his death, the defendant has waived the right to make such an objection.

In respect of the provision of the certificate, that the member to whom it is issued must be a member in good standing at the time of his death, we may also say, in passing, that, while the burden is upon the plaintiff, in an action of this kind, to show that the deceased member was in such good standing at the time of his death ( *Seibert v. Chosen Friends*, 23 Mo. App. 268, 275), yet the certificate is proof of good standing at the time when it was issued, and such good standing will be presumed to have continued until the contrary is made to appear. It follows that, in such an action, when the certificate is put in evidence, the burden is upon the defendant to show that, at the time of his death, the member had lost his good standing. *Supreme Lodge v. Johnson*, 78 Ind. 110; *Ziegler v. Mutual Aid Society*, 1 McGloin [La.] 284.

We shall also prepare the way for the statement of

the ground upon which we decide this case, by the further observation, that in these cases the courts act upon the principle that the non-payment of assessments does not work a forfeiture of the rights secured by such a benefit certificate, unless the member received notice of the assessments, except in those cases where the laws of the society provide for a suspension *ipso facto*, in the event of non-payment, irrespective of notice. *Borgraefe v. Knights of Honor*, 22 Mo. App. 127, 143; *Seibert v. Chosen Friends*, 23 Mo. App. 268. Here, the laws of the defendant corporation, which were put in evidence, show that a member cannot be suspended for non-payment of assessments without notice; and, as it is not pretended that James Mulroy did not pay all the assessments of which he had notice this theory of the defence entirely fails. *Supreme Lodge v. Johnson*, 78 Ind. 110; *Hall v. Supreme Lodge*, 24 Fed. Rep. 450, 455.

The turning-point in the case, therefore, is, whether James Mulroy was lawfully expelled from the order on the tenth of November, 1884. In determining this question we must also lay out of view a number of considerations which have been pressed upon us in argument, which either have no bearing upon it, or which it is not necessary to consider. In the first place, we concede that there is a great array of judicial authority in favor of the proposition, that, where members are expelled from religious societies, social clubs, benevolent societies, and other voluntary organizations, incorporated or unincorporated, the judicial courts will not interfere to reinstate them or to revise the judgment of expulsion, until the expelled member has exhausted all the remedies available to him within the organization itself, by appealing to a higher judicatory provided by the rules of the society, or otherwise. *Karcher v. Supreme Lodge*, 137 Mass. 368; *Chamberlain v. Lincoln*, 129 Mass. 70; *La Fond v. Deems*, 81 N. Y. 508; *White v. Brownell*, 2 Daly [N. Y.] 329; *Poultney v. Bachman*, 31 Hun [N. Y.] 49; *Harrington v. Workingmen's Benevolent Society*, 70 Ga. 342; *Loubat v. Le Roy*, 15

Abb. New Cas. 1. But all the cases which so hold either expressly state, or tacitly assume, that, in the action which the society took, and against which relief was sought, it acted within the scope of its powers, and in prosecuting their inquiries into the propriety of the action of such societies in the expulsion of members, or in the disposition of property, or otherwise, courts have in general proceeded no further than to inquire whether the judicatory provided by the laws of the society, which acted, had jurisdiction in the particular case. *State ex rel. v. Farris*, 45 Mo. 183 ; *Commonwealth v. Green*, 4 Whart. [Pa.] 531 ; *Gibson v. Armstrong*, 7 B. Mon. [Ky.] 481 ; *Shannon v. Frost*, 3 B. Mon. [Ky.] 253 ; *Robertson v. Bullions*, 9 Barb. [N. Y.] 134 ; *Harmon v. Dreher*, 1 Spear. Eq. [S. C.] 87 ; *German Reform Curch v. Seibert,* 3 Pa. St. 282 ; *Den v. Pilling*, 4 Zab [N. J.] 653 ; *Hall v. Supreme Lodge*, 24 Fed. Rep. 450, 453 ; *Commonwealth v. Pike Benevolent Societies*, 8 Watts & S. [Pa.] 247, 250 ; *Black and White Smiths' Society v. Van Dyke*, 2 Whar. [Pa. St.] 309. It is true that the English courts and the supreme judicial court of Massachusetts have, in dealing with social clubs, and even with mutual benefit, and other societies, gone beyond this, and have said that there must not only be a power to expel the member, but that the power must be exercised in good faith—in other words, these courts will interfere either in the case of a want of jurisdiction, or of fraud in its exercise. *Karcher v. Supreme Lodge*, 137 Mass. 368 ; *Hopkinson v. Marquis of Exeter*, L. R. 5 Eq. 63 ; *Dawkins v. Antrobus*, 17 Ch. Div. 615 ; *Inderwick v. Snell*, 2 Mac. & G. 216, 221 ; *Lambert v. Addison*, 46 Law Times [N. S.] 20, 24 ; *Manby v. Life Ins. Society*, 29 Bevan, 439, 445 ; *Dummer v. Corporation of Chippenham*, 14 Vesey, 245, 252 ; *Blisset v. Daniel*, 10 Hare, 493. It follows from the preceding statements that the judicial courts will not, on the one hand, declare the expulsion of a member to be invalid because of mere irregularities in the steps which have led up to it (*Bouldin v. Alexander*,

15 Wall. 131, 139 ; *Shannon v. Frost*, 3 B. Mon. 253 ; *German Reformed Church v. Seibert*, 3 Pa. St. 282, 291 ; *State v. Farris*, 45 Mo. 183) ; and that they will, on the other hand, set aside or disregard the expulsion of a member which has been had without notice to him and an opportunity to defend against the charges preferred (*Commonwealth v. German Society*, 15 Pa. St. 251 ; *Dawkins v. Antrobus*, 17 Ch. Div. 615, 630 ; *Labouchere v. Earl of Wharncliffe*, 13 Ch. Div. 346, 353 ; *Fisher v. Keane*, 11 Ch. Div. 353 ; *Wachtel v. Noah Widows, etc., Society*, 84 N. Y. 28 ; *Rex v. Town of Liverpool*, 2 Burr. 723, 731, opinion by Lord Mansfield) ; or for offences for which the society has no express power to expel, and which are not injurious to the society or contrary to law. *People v. Medical Soc'y*, 32 N. Y. 187, 192 ; *Commonwealth v. St. Patrick's Benevolent Society*, 2 Binney [Pa.] 441, 449 ; *Commonwealth v. German Society*, 15 Pa. St. 251 ; *Green v. African Society*, 1 Serg. & R. [Pa.] 254. In early cases the doctrine has been announced that corporations have the same inherent power to expel members for reasonable causes, which they have to make by-laws, and that it is not necessary that the power should be found in the express language of their charters. *Bruce's case*, 2 Strange, 819 ; *Rex v. Richardson*, 1 Burr. 519, 539 (overruling on this point, *Bagg's case*, 11 Coke Rep. 98) ; *Commonwealth v. St. Patrick's Benevolent Society*, 2 Binn. [Pa.] 441, 448. The offences for which corporations possess the inherent power of removing an officer or corporator were thus classified by Lord Mansfield : " 1. Such as have no immediate relation to his office, but are in themselves of so infamous a nature as to render the offender unfit to execute any public franchise. 2. Such as are only against his oath and the duty of his office as a corporator, and amount to a breach of the tacit conditions annexed to his franchise or office. 3. The third sort of offences for which an officer or corporator may be displaced is of a mixed nature ; as being an offence not only against the duty of an office, but also a

matter indictable at common law." *Rex v. Richardson,*
1 Burr. 517, 538 ; *Rex v. Town of Liverpool,* 2 Burr. 723,
732.

Mutual benefit societies, such as the one under con-
sideration, are of a two-fold character : (1) They are
social organizations resembling religious societies and
social clubs. (2) They are also mutual insurance com-
panies. If the courts could deal with them in their
character of mere social organizations, most of the
foregoing principles would be applicable. In such a
case it might be that the courts of the present day, fol-
lowing the doctrine laid down by Lord Mansfield and
others, would hold that they possess an inherent power
to expel members for offences which injuriously affect
the society, although such a power is not granted by
their charter, or by the statute under which they are
organized. It is not necessary for us, in this case, to
express a definite opinion whether a court ought so to
hold or not. We may say, for the purposes of this
case, that, assuming the inherent power of expelling a
member to exist, it cannot be exercised upon the mere
ground that the member has uttered false and malicious
charges against another member. It has been held, in a
case where this inherent power of expulsion was con-
ceded, that a by-law providing for the expulsion of a
member for villifying another member of the society
was void. *Commonwealth v. St. Patrick's Benevolent
Society,* 2 Binn. [Pa.] 441.

But in determining whether the expulsion of Mul-
roy was valid, so as to revoke his benefit certificate, we
have to deal with this society primarily in its character
of a mutual insurance association. In societies such as
this, the members to whom benefit certificates are issued
acquire property rights in the society of a very impor-
tant character ; and in dealing with these rights it is
highly essential that the courts should confine themselves
strictly to the terms of the contract which the members
have made among themselves. *Grand Lodge v. Elsner,*
26 Mo. App. 108; *Coleman v. Knights of Honor,* 18 Mo.

App. 189. It would be a very dangerous doctrine to apply to societies which, in addition to the character of social clubs, possess also the character of life insurance companies, and which undertake to insure the lives of their members for the benefit of their families, paying them a large sum in the event of the death of the member, the rule that they can expel their members, and thereby deprive their families of the benefits of this insurance, it may be, after the member has paid assessments for many years, and when, by reason of age or bad health, he has passed into such a state that new insurance upon his life cannot be procured—for causes not named in their constating instruments, or in the public statutes, but such as the members of the subordinate lodge may, in the excitement of the hour, deem a good ground of expulsion. We hold in this case, as we have held in other cases of this kind, that the rights of the beneficiary in such a certificate are strictly a matter of contract; that this contract is to be found in the terms of the certificate itself, in the statutes of the society, and, in the case of a society incorporated under the laws of this state, in the statutes of this state relating to such societies.

Looking at these instruments, we find no authority in them for the expulsion of a member of this society for the cause for which the lodge to which James Mulroy belonged undertook to expel him. The cause for which he was tried and expelled was, according to the record which was read in evidence, "making false and malicious charges against a member of this lodge," and, in another place, "making false and malicious charges against Brother Tobin," without specifying *to whom* the false and malicious charges were made. The constitution and statutes of the society, which were put in evidence, contain no grant of authority to a subordinate lodge to expel a member for such a cause. Article X., of the "constitution governing subordinate lodges" enumerates eleven distinct offences for which a member may be suspended or ex-

pelled, but none of them resemble the charge upon which James Mulroy was expelled in this case. The one which comes nearest to it is section 6, which recites, that "a member who shall be guilty of immoral conduct shall, on conviction thereof, be suspended or expelled, as the lodge may determine." But it would plainly be a misinterpretation of this provision to hold that it refers to the case of a member making false and malicious charges against another member. It manifestly refers to conduct involving the personal morals of the member, to such an extent as to render him unfit for fellowship with the other members. The succeeding article (XI.) relates entirely to trials and punishment. Then follows article XII., under which it would seem this prosecution and expulsion were had. Section 1 of this article reads: "If a member shall make *to this lodge*, or *to its dictator*, any accusation against a member which shall prove to be false and malicious, he shall be suspended or expelled." It is perceived that this section is a grant of authority to subordinate lodges to expel only in the case where a member shall make false and malicious accusations against another member, either to its lodge or to its dictator. It is not necessary for us to say whether or not such a regulation would be declared void as unreasonable. Although it is found in what is called the "constitution governing subordinate lodges," it is in the nature of a by-law: for the statute of this state under which this society is incorporated is its charter. But it nowhere appears in this record that James Mulroy was ever tried by his lodge, or expelled therefrom, for making false or malicious charges against a member, either to the lodge or to its dictator. So far as the record discloses, he was tried and expelled for the mere offence of slandering a member, it may have been, for aught that appears, in another state, or even in a foreign country. It may have been while testifying as a witness in a court of justice, while making a communication as a client to his counsel, or upon some other occasion which in law rendered it absolutely privileged. To

allow the rights of a member in a society, which is in the nature of a mutual life insurance company, to be forfeited for such a cause, by such of his associates as happen to compose a subordinate lodge or branch of the general society, would, we apprehend, be going further than any court has yet gone.

It follows from these premises that the lodge to which James Mulroy belonged had no jurisdiction whatever to try or expel him upon the charge above named ; that his expulsion was consequently null and void ; that, being merely void, it was not incumbent upon him to take steps to have it reversed in a higher judicatory of the society ; but that it left him clothed with the rights of membership, at least in respect of the mutual benefit fund of the society, to the same extent as though it had not taken place. Thereafter, if he paid no assessment, he was not notified to pay any ; and consequently such non-payment cannot now be set up as a ground of forfeiture. In placing our decision upon the ground of want of jurisdiction over the subject-matter, we find it unnecessary to determine the question whether Mulroy received, prior to the second trial which resulted in his expulsion, the notice required by the rules of the order. It is immaterial to consider whether they gave him such notice, for they had no jurisdiction to try him at all upon the charge exhibited.

It follows from the foregoing statements and conclusions that the plaintiff was entitled to judgment for the sum of two thousand dollars, upon the conceded facts, and that her motion for judgment *non obstante veredicto* ought to have been sustained.

The judgment of the circuit court will be reversed, and the cause remanded to that court, with directions to enter judgment in favor of the plaintiff for the sum of two thousand dollars, with interest from the date of the commencement of the action. It is so ordered. Judge Rombauer concurs ; Judge Lewis not sitting.

On January 31, 1888, THOMPSON, J., delivered , a supplementary opinion.

A motion has been filed by the defendant in error for a modification of our judgment, so as, instead of directing a judgment for the plaintiff, to remand the cause for another trial. ' This motion is supported by an affidavit showing that only a portion of the records of the lodge of which the deceased was a member were put in evidence at the trial; that a thorough and complete examination of the records shows that charges were preferred by Mulroy to his lodge against another member thereof, charging said member with the commission of an act which would, under the laws of this state, constitute a crime; that the member so charged was tried and acquitted; and that Mulroy was then charged, by another member of his lodge, with making to the lodge an accusation against a member which had been proved to be false and malicious; that Mulroy was notified to appear in the lodge on a day certain for a trial on said charge; that he did so appear and was thereupon tried, and by more than a two-thirds vote expelled from the lodge and order. In the motion it is stated as a reason for not introducing this evidence that it became unnecessary under the view which the court took of the law of the case; and the record gives countenance to this conclusion. If this is so, by directing a judgment we conclude the rights of the defendant in error; by reason of an error of the trial court in its favor. The court has a discretion to remand where it seems that the ends of justice would be subserved by so doing. This was the view upon which a majority of the court acted in remanding the case of *Foster v. Wulfing* (20 Mo. App. 85), and we have frequently acted on that view since that time. This seems to be a proper case for the exercise of such a discretion.

Moreover, on recurring to the subject, we find our-selves in some doubt as to whether the trial court could properly have entered a judgment for the plaintiff on

her motion for judgment *non obstante veredicto.* This motion is not much used in our practice, and it may be doubted whether it can be invoked by a plaintiff who sustains in any measure the burden of proof, and whose cause of action, as stated in his petition, is not admitted by the answer.

However this may be, we shall reform our judgment so as to reverse the judgment of the circuit court and remand the cause. It is so ordered. Judge Rombauer concurs; Judge Lewis not sitting.