ANNA HOEFFNER, Respondent, v. GRAND LODGE OF THE GERMAN ORDER OF HARUGARI OF THE STATE OF MISSOURI, Appellant.

### St. Louis Court of Appeals, May 13, 1890.

1.   Benefit Societies: EXPULSION OF MEMBER.   A member of a benevolent insurance association has the right to exact that, on proceedings for his expulsion, there should be a substantial compliance with the rules of the society governing the proceedings, but this right may be waived.   And, where there is, furthermore, an express rule of the society that there shall be a trial only in the

manner prescribed by other regulations, a judgment of expulsion is invalid if the votes on the expulsion of the member are. taken in a manner different from that prescribed, as, if the votes be taken by casting white or black balls, when the rule prescribes that the votes shall be given in writing.

2. ——— : ——— : REMEDY. If a judgment for the expulsion of a member is void because rendered in an unauthorized manner, and the member treats it as invalid, his membership continues, and he need not seek reinstatement. *Held*, accordingly, that when the beneficiary of an expelled member sues for benefits in the nature of life insurance, and the judgment of expulsion is set up as a defense to the action, it is sufficient for the beneficiary to show that this judgment was invalid; the beneficiary need not further show that he has exhausted all remedies within the order, or society, to have the judgment vacated.

3. ——— : ——— : EFFECT OF · MEMBER'S INSANITY. In an action involving the validity of the judgment of a society for the expulsion of a member, no waiver, by such member, of the rules of procedure of the society can arise, if such member was insane at the time of the rendition of the judgment. And *semble* that such a judgment is invalid, if such insane person was under guardianship at the time, and his guardian was not made, a party to the proceeding for his expulsion.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Kehr & Tittmann*, for appellant.

( 1 ) Aside from by-laws, every benevolent society, organized for the purpose of extending aid to its members, and which pays such benefits from contributions assessed upon its members, has the inherent power to expel a member for fraud upon the fund. Niblack on Mut. Ben. Societies, secs. 37–41, 59 ; Bacon on Benefit Societies, sec. 97 ; *Society v. Commonwealth*, 52 Pa. St. 125–33. ( 2 ) It is settled law that voluntary associations, or corporations, for benevolent purposes are left to enforce their own rules of. discipline, without interference from the courts. The latter will not declare the

expulsion of a member to be invalid because of irregularities in the steps which have led up to it. The sentence of expulsion is conclusive, except where there is want of jurisdiction, either of the subject-matter or of the person accused. *Mulroy v. Knights of Honor*, 28 Mo. App. 469; *Society v. Van Dyke*, 2 Whart. 309; *Commonwealth v. Society*, 8 Watts & S. 247; *Society v. Commonwealth*, 52 Pa. St. 125–31; *Sperry's Appeal*, 116 Pa. St. 391–7; *Otto v. P. and B. Union*, 75 Cal. 308–14; *Schmidt v. Lodge*, 84 Ky. 490–2; *Anacosta Tribe v. Murbach*, 13 Md. 91; *Osceola Tribe v. Schmidt*, 57 Md. 98; *Woolsey v. Odd Fellows*, 61 Iowa, 492; *Rood v. Ass'n*, 31 Fed. Rep. 62; Note to *Van Houten v. Pine*, 36 N. J. Eq. 134; *White v. Brownell*, 2 Daly, 359; Niblack on Mut. Ben. Soc., secs. 48, 59–62; Bacon on Ben. Soc., sec. 442; Hirschel on Law of Fraternities, p. 59. (3) Hoeffner was not in good standing at the time of his death, owing to his expulsion, the judgment whereof was not reversed. He had appealed to the grand lodge, as he had a right to do. It was his duty to exhaust the remedies provided by the society of which he was a member. *Karcher v. Sup. Lodge*, 137 Mass. 368; *Chamberlain v. Lincoln*, 129 Mass. 70; *Oliver v. Hopkins*, 144 Mass. 175; *Laford v. Deems*, 81 N. Y. 507–14; Niblack Mut. Ben. Soc., secs. 79, 130–1; also, 360, 414; *Harrington v. Society*, 70 Ga. 340. (4) The supposed defects in the proceedings against Hoeffner are mere irregularities in the steps which led up to the sentence of expulsion. They do not in anywise touch the question of jurisdiction. The courts, therefore, will not examine or review them. But they are not even irregularities which controlled or affected the result, as an examination of the three supposed defects, dwelt upon by the court below, will show. By appearing generally, the accused waived all objections as to the regularity of the appointment of the tribunal, and all objections to notice. Bacon on Ben. Soc., sec. 102; Niblack on Mut. Ben. Soc., secs. 68, 71. (5) The

insanity of the accused does not excuse the non-performance of lodge duties, nor does it prevent or abate his trial. *Karshaw v. Sup. Lodge*, 24 Cent. Law Jour. 129; *Pfeiffer v. Weishaupt*, 13 Daly, 161; *Hellenberg v. Dist. No. 1*, 94 N. Y. 580, 587; Freeman on Judgments [3 Ed.] sec. 152.

*Henry Kortjohn* and *W. E. Fisse*, for respondent.

(1) All proceedings of societies in the expulsion of members must be in substantial accordance with the letter of their rules. Bacon Ben. Soc., sec. 101; Niblack Mut. Ben. Soc., secs. 48, 52; Hirschel on Frat. & Soc., pp. 55, 56, 57; *White v. Brownell*, 2 Daly, 329, 359; *Otto v. Ass'n*, 75 Cal. 309, 314; *Albers v. Exchange*, 39 Mo. App. 583. (2) In the present case there were substantial departures from the rules of the society concerning expulsions. (3) It is also essential to the validity of a judgment of expulsion that the proceedings of the association be marked with good faith, and that they shall be consistent with the principles of natural justice. Where the expulsion is not founded on reasonable evidence, the judgment cannot be regarded other than malicious. *Otto v. Ass'n*,. 75 Cal. 308; *Albers v. Exchange, supra.*

Rombauer, P. J.—This is an action by the widow of a member of a benevolent society to recover the death benefit, payable upon the decease of a member to his widow. The petition states that the member's death occurred in December, 1887, but that the society declined to pay the plaintiff anything as a death benefit, although she made due proofs of death. The answer denies that the plaintiff's husband was a member of the society at the date of his death. The answer then states that the plaintiff's husband was tried, found guilty and expelled from the society, by his lodge, for simulating sickness in order to obtain sick benefits;

that this offense, under the laws of the society, was punishable by expulsion, and that such expulsion took place in May, 1886, and that the deceased was not at any time thereafter a member of the society.

The reply denies the new matter set out in the answer, and adds that the deceased was, at the date of his trial and anterior thereto, insane, and irresponsible for his conduct; that this fact was well known to the officers and members of his lodge, and that such insanity continued to the date of his death. The cause was tried by the court without a jury, and the trial resulted in a judgment for the plaintiff, the court declaring that, on the pleadings and evidence, the judgment must be in favor of the plaintiff.

The defendant assigns numerous errors, all having reference to the controlling proposition that the court erred in not giving to the finding of the lodge a conclusive effect, in determining the rightfulness of the member's expulsion.

We may state, at the outset, that the power of the society to expel a member for simulating sickness is conceded by the plaintiff, and it is also conceded that by such expulsion, if brought about in strict conformity with the laws of the society, the member and his beneficiary forfeit all further claim on the society. To what extent the finding of these societies, in proceedings against their own members, are conclusive upon the courts, is the only question presented for our consideration.

"When the charter of a society provides for an offense, directs the mode of proceeding, and authorizes the society on conviction of a member to expel him, this expulsion, *if the proceedings are not irregular*, is conclusive and cannot be inquired into collaterally by *mandamus*, action or any other mode. The courts have jurisdiction to keep such tribunals in the line of order, and to prevent abuses, but they do not inquire

into the merits of what has passed *in rem judicatum, in a regular course of proceeding.*" Niblack on Benevolent Societies, 48.

This statement, although not very definite and precise, is perhaps as satisfactory a statement as, owing to the inherent difficulties of the subject, can be made. In the leading case of *Black and White-Smiths' Society v. Van Dyke*, 2 Whart. 309, GIBSON, C. J., referring to the effect of such trials, says the member "stands convicted by the sentence of a tribunal of his own choice, which, like an award of arbitrators, concludes him," and this view has met with approval in other states. *Anacosta Tribe v. Murbach*, 13 Md. 91 ; *Osceola Tribe v. Schmidt*, 57 Md. 98 ; *Schmidt v. Abraham Lincoln Lodge*, 84 Ky. 490. But the award of arbitrators has no conclusive effect, unless it is made within the terms of the submission. Hence, in *Society v. Commonwealth*, 52 Pa. St. 125, it was held that the rightfulness of the expulsion cannot be questioned in the courts *except in cases of irregularity of proceedings*, and in *Sherry's Appeal*, 116 Pa. St. 391, which was decided by an almost evenly divided court, Justice GREEN in an able dissenting opinion holds that, "in proceedings against corporators, within the corporation, whether for suspension or expulsion, the procedure itself must be in conformity with the organic law of the corporation ; the cause must be sufficient, the trial and proceedings must be regular, and the proof must be at least adequate in the judgment of the corporation."

We think that the courts in dealing with these benevolent societies should keep the following propositions in view : They are organizations whose members are not versed in the nice technicalities of the law, but are governed by a code of their own, which they deem sufficient to insure practical justice in the management of their affairs. They have a right to expect a strict compliance with their rules on part of their members,

as such compliance is essential to the successful continuance of the society. On the other hand, their members have a right to exact a substantial compliance on the part of the society with all such rules, by which their money interests in the society are affected, and a forfeiture of their membership is brought about. This of course does not exclude the question of waiver either by the society or by the member, but, in the absence of such waiver, the terms of their constitution and laws form the contract binding on both.

Now, the constitution and laws of the defendant order do not give it a general jurisdiction to try offenses against its rules, nor do they anywhere provide that the decision of the lodge, or that of the grand lodge upon appeal, shall be final or conclusive on the member. They do provide for the trial of certain offenses, but they further provide that "the same shall be brought to the knowledge of the lodge, to a trial and a judgment *only* in the manner prescribed in the following sections." Among the sections referred to, is one providing for a committee of investigation composed in a certain manner; and it appeared in evidence that the committee in the present instance was not thus composed. This requirement the member could waive, and, as there was some evidence that the plaintiff's husband had waived it, the court could not have withdrawn the question of waiver from its own consideration by peremptory instruction. There was also some evidence that the member had waived another provision, which required that the report of the committee should be read at two successive meetings, and voted on at the third. A vote of two-thirds of all of the members present at that meeting was required to carry into effect a recommendation for permanent suspension or expulsion. These provisions are prescribed by paragraph 6. The rules then contain the following provision:

"Sec. 7. At all votes which are prescribed in the foregoing paragraphs, the parties must retire from the lodge room, and thereafter no further debates shall be allowed. In case the motion of the. committee is not affirmed, any member is entitled to move a lesser penalty. All such votes shall be taken in writing, 'yes' or 'no' for or against the pending motion."

It appeared, without contradiction, that the vote taken on the expulsion of plaintiff's husband was taken by casting white and black balls, and not in writing ; and there was no evidence, whatever, that the member had waived this requirement, as he was neither present when the vote was taken, nor, as far as the record shows, ever informed of how the vote was taken. The judge of the trial court put his ruling, by which he set aside the judgment of the lodge, on the ground that no proper vote was ever taken on the expulsion of the plaintiff's husband, and that there was no evidence, whatever, that he had ever waived the requirement of a written vote ; and this ruling was unquestionably correct, and leads to an affirmance of the judgment.

The defendant's counsel argues extensively that the phrase, "all such votes," refers only to a vote upon a motion for a lesser penalty, but such a construction is narrow, opposed to the spirit of the entire law, and at best designed to subject the laws of these societies to a strict technical test, which the defendant's counsel is anxious to avoid in all other respects.

As above seen the rules of the society provide that a judgment shall be rendered only in the manner prescribed in the foregoing sections. This provision is, therefore, jurisdictional, and we need not rest our decision on the sole ground that the manner of voting is of the substance of every election. We held in *Mulroy v. Supreme Counsel Knights of Honor*, 28 Mo. App. 463, that, where a society expels a member for cause unauthorized, its judgment is void ; and the same

result must follow, where it expels him in a mode not only unauthorized, but expressly prohibited, by its rules. We are as little justified in setting aside provisions in favor of the member, as we would be in setting aside those in favor of the society. If we can set aside the requirement of a written vote, we might, by parity of reasoning, set aside the requirements of a two-third vote, which the rules require, and make the judgments of these societies depend for their validity, not upon what they have deemed essential requisites in their constitution and laws, but what we, ourselves, may deem essential. .

A point is made that it does not clearly appear that the member exhausted his remedies by appeal to the grand lodge. Under the view we take, this question is immaterial. If the judgment was void, its affirmance on appeal could not validate it. Where a member seeks reinstatement by *mandamus* he must show that he has exhausted his remedies within the order, but where a judgment of expulsion is void, and the member treats it as such, he continues a member and need not seek reinstatement. *Mulroy v. Knights of Honor, supra.*

It was in evidence in this case that all dues to the society were tendered when payable, between the date of the alleged expulsion, and the date of the member's death. There was no evidence that other duties were required of the member, which he failed to perform. Had the amount of these dues been shown, it would have been the duty of the court to deduct their aggregate from the amount of recovery in this case, but, as they were not shown, it cannot even be claimed that the judgment is excessive.

Some other questions are raised by the record, which, in view of the probability of their recurrence in other cases, we deem proper to notice briefly. The answer sets up the fact, that the plaintiff's husband was insane, while his trial and expulsion took place.

Upon the trial of the cause the plaintiff offered to show that her husband was actually sick and not shamming sickness prior to his expulsion, and that, prior to his trial and at the date of his trial and expulsion, he was actually insane.   The court ruled out all this evidence. It was decided by Judge BLODGETT in the case of *Hawkshaw v. Supreme Lodge*, 25 Cent. Law J. 129, that insanity is no excuse for the non-payment of assessments in a benevolent society, any more than it would furnish an excuse for the non-payment of premiums on a policy of insurance.   It was decided in *Hellenberg v. District No. 1*, 94 N. Y. 580, that, when the member, on account of his insanity, fails to make a designation, and his benefit lapses on account of such failure, the courts cannot change the contract by providing a beneficiary. The ruling in these cases was unquestionably correct, as the contract is made by the parties, and the court can make no contract for them.   It was also decided in *Pfeiffer v. Weishaupt*, 13 Daly. 161, that a trial of, and judgment against, an insane member of one of these societies is not necessarily void, as, under the laws of New York, a judgment may be recovered against a lunatic without suing him by committee.   In this state an insane person, who is under guardianship, must be sued by service upon his guardian, and must defend by guardian, and a judgment recovered against him in any other manner is void ; hence the ruling in *Pfeiffer v. Weishaupt, supra*, could have application to such cases only, where the insane member is not under guardianship.   However this may be, one thing seems to be clear, and that is that no questions of waiver can arise in case of an insane person, who is served and appears personally to the action, since not even a guardian *ad litem* could make any admissions binding on him.   *Collins v. Trotter*, 81 Mo. 275.   It is, therefore, essential that, where a judgment of forfeiture is invoked by the society against one of its members, who

is shown to have been insane at the date when such judgment was obtained, the court should see that every step taken in the proceeding was in *strict conformity* with the requirements of the rules of the society, in order to uphold the forfeiture. In that view of the case, evidence of the insanity of the deceased member at the date of the trial was clearly competent, as it was evidence tending to negative the possibility of a waiver, and the court, in rejecting the evidence, made concessions in favor of the defendant, which the defendant was not entitled to.

In the present state of the record, this ruling does not affect the result either way, as the judgment of the trial court must be upheld on the ground first hereinabove stated. All the judges concurring, the judgment is affirmed.