## SUPREME COURT.

THE PEOPLE *ex rel.* MICHAEL SCHMITT agt. SAINT FRANCISCUS BENEVOLENT SOCIETY.

Where a member of a *charitable and benevolent society,* organized under the statute of 1848, entitled "An act for the incorporation of benevolent, charitable, scientific and missionary societies," is *expelled* from such society for the non-observance of a by-law which is not authorized by the statute nor the constitution of the state, he will be restored to membership by *mandamus.*

Members of such society cannot be expelled therefrom upon charges made against them *without notice,* and an opportunity to be heard in their defence.

*Erie Special Term, November,* 1862.

THE respondents are a benevolent society in the city of Buffalo, organized under the laws of 1848, entitled "An act for the incorporation of benevolent, charitable, scientific and missionary societies."

The relator was a member thereof and was excluded, and

People *ex rel.* Schmitt agt. Saint Franciscus Benevolent Society.

he made a motion for a peremptory mandamus, compelling the respondents to reinstate him to membership. The facts sufficiently appear in the opinion.

Motion for mandamus.

L. L. Lewis, *for relator.*
Eli Cook, *for defendants.*

Marvin, Justice. I think this motion must be granted. The relator makes a clear case of right to membership in the corporation, and the facts presented in opposition to the motion are not sufficient to justify the expulsion of the relator from the society. It is not my purpose to enter into a discussion of some interesting questions presented upon the argument; it will be enough to say that the relator, as one of the corporators, had rights which the law will protect. He states, that as a member of the corporation, he performed all the obligations and conditions required of him by the by-laws, rules and regulations of the society. He shows that he was expelled from the society in his absence, and without having had any notice in time of any intended proceedings against him, to enable him to attend and protect his rights. He states, upon information and belief, that he was expelled from the society by a vote of a majority of the members present, for the pretended reason that he had neglected to attend the confessional, that is to say, that he had neglected to attend before a catholic priest and confess his sins, as required by a by-law of the society. He states that he had fully complied with the by-law referred to during each and every year that he had belonged to the society, and that no notice had at any time been given to him that he had violated any of the laws or regulations of the society. These allegations are not put in issue or denied by the corporation. True, the affidavits read in opposition to the motion, were designed to show some notice of the intended proceedings against the defendant, or rather notices to attend certain meetings

of the society. But it is not pretended that such notices came to the knowledge of the relator in time to enable him to attend the meetings indicated, at one of which he was expelled. The corporation takes and relies upon the position that no notice was necessary. Again, I cannot learn from the papers for what alleged cause the relator was expelled from the society. In the affidavit of the president of the society, (designed mainly to show that, though notice to the relator was not necessary, he directed notice to be given,) it is stated that the relator, "although a member of the association or society, having violated its constitution, by-laws and regulations, was, on the 17th day of July last, by a vote of a majortity of the members of the said association, expelled therefrom." What part of the constitution, or what by-law or regulation was it claimed that the relator had violated? This does not appear; it is added that there is no provision in the articles of association, constitution or by-laws requiring any notice to be served upon a member guilty of delinquency in attending the confessional; but in this case, for the purpose of enabling Schmitt to make a defence before said association, he, the president, caused notice to be left at the house of Schmitt, &c., in order that he might appear and explain before the said society the charges that were made against him. What charges?

It is said that no notice was necessary in a certain case, but it is not said that the charge against the relator was the one in which no notice was necessary. For aught that appears in these papers, the relator may have been charged with the violation of any other of the by-laws, &c., aside from the one relating to the confessional. There is another affidavit, made by the person who made some attempt to serve notice upon the relator to attend the meeting, " to answer certain charges which were preferred against him for a violation of the constitution, by-laws and regulations of the said association;" and in another place it is said,

"for the purpose of answering the charges aforesaid." Thus it nowhere appears what the charge was, upon which the relator was expelled. The relator, after his expulsion, was informed that it was upon the *pretended* reason that he had neglected to attend the confessional, &c. And the papers read in opposition to the motion, do not show whether this was the reason or charge upon which he was expelled, or what the charge was. No good reason or cause is therefore shown for his expulsion. But if it is assumed that the relator was expelled upon a charge of violating article 4 of the by-laws, I think we shall come to the same conclusion.

The 2d subdivision of this article reads : "He is bound to receive the holy sacraments of penance and eucharist twice a year, and has to prove it before all the meeting that he has done the same, after he has been admitted in said society ; without this, he shall not be considered a member." By article 2d, the society is to consist of members who profess the Roman Catholic religion, and who, at the same time, are church members of the St. John's church, and as such must have a pew or slip in said church. Thus it is seen that no one can become a member of the corporation, unless he professes the catholic religion and is a member of the St. John's church, and has a pew or slip therein ; and after becoming a member of the corporation, he is to receive, twice a year, certain sacraments of that church, and is to prove such fact before the society, or he is not to be considered a member. It is argued that this clause of the 4th article is invalid ; that it is not authorized by the statute under which the corporation is organized ; that it is against the general policy of our laws and the constitution of the state, and that it is unreasonable. In my opinion, this by-law is not authorized by the statute, and it is in conflict with our constitution, which declares : Art. 1, sec. 3. "The free exercise and enjoyment of religious profession and worship, without discrimination or

preference, shall forever be allowed in this state to all mankind."

The defendant was incorporated under the act of 1848, entitled "An act for the incorporation of benevolent, charitable, scientific and missionary societies." The act authorizes the corporation "to make by-laws for the management of its affairs, not inconsistent with the constitution and laws of this state, or of the United States." The purposes of the corporation in the present case, as declared in the charter or articles of association, were *charitable and benevolent.* Its general plan was to obtain money from its members, and use it for their benefit in times of the sickness or death of a member, and to render assistance to the widow of the deceased member, &c., &c. There is nothing said in the articles of association touching the religious character of its members. It may be that the society had the right to prescribe who should be members, and to require that the applicant for membership should be a professor of the catholic or any other religion, and that he should be a member of some particular church. The society may, I suppose, refuse to admit any one to membership, and such person would have no remedy. But once admitted, he will have all the rights and privileges provided by the charter under the statute; and the charter or articles of association can contain no provision in conflict with the statute. In the present case, the relator, who had been a member of the corporation for many years, and had paid in all dues, according to the charter and by-laws, has a legal right to be continued a member until he shall violate some rule or by-law authorized by law, and which justifies his expulsion. If the by-law in question, touching the sacraments, &c., is valid, then the relator will be deprived of a valuable right secured to him by the constitution. He cannot be permitted the free exercise and enjoyment of any other religion except the catholic. He must continue to profess that religion, and partake of the sacraments prescribed, &c., or

forfeit his right as a corporator; a pecuniary right having no necessary connection with any particular religion.

It is not my intention to discuss this question at length; but in my opinion, the by-law in question cannot be sustained. The religious privileges which the constitution and the laws secure to all persons of this state, cannot in this way be infringed or abrogated. This position will, of course, have no relation to any rules and regulations, or articles of faith, adopted by any religious denomination or society, and for a departure from which the member is liable to punishment or removal. Our laws permit these societies to establish any rules, regulations or articles of faith, for the government of their own bodies, and he who becomes a member of such a religious society, agrees to the rules, regulations and articles of faith, and to the mode of discipline and trial provided by it, and the court will not interfere. But in this case the defendant was organized and incorporated for *charitable and benevolent* purposes, under a statute of the state, and it is possessed of property and funds in which the relator has an interest; and the law protects that interest, and he cannot be deprived of his rights by an unauthorized by-law, though he may have assented to it.

I am also satisfied that members of this society cannot be expelled upon charges made against them, until they have an opportunity to be heard in their defence. This is a general principle. It is a case of property of legal rights— but a case of voluntary association for purposes affecting no substantial property rights, in which the associates provide all their own laws, and may provide for expulsion, without notice, if they choose to do so. Here the relator had rights which the law will protect; and if there had been a by-law that any member might be expelled by a vote of the society, in his absence and without notice, I have no doubt such by-law would be illegal. It would be

unreasonable. It would be an attempt to withdraw from the protection of law, the rights of a member.

Without further discussing the question raised, I think it clear that the relator is entitled to the relief he demands. He must be restored to membership, and if there should be charges made against him, he must have a reasonable notice of them, and an opportunity to make his defence.

Let a peremptory mandamus issue.