THE PEOPLE *ex rel.* BARTLETT *v.* THE MEDICAL SOCIETY OF THE COUNTY OF ERIE.

Mandamus is the appropriate remedy to compel a county medical society to admit an applicant entitled to membership.

A licensed physician, having the prescribed qualifications, cannot be excluded from the franchise, on the ground that he did not conform to the conventional rules of the society at a period antecedent to his application.

The code of medical ethics, adopted by the by-laws of a county society, is obligatory on members alone, and its non-observance, previous to membership, furnishes no legal cause either for exclusion or expulsion.

When a party, having a clear presumptive title, claims admission to the exercise of a corporate franchise, the right of immediate expulsion should be clear and unquestioned, to justify the rejection of the claim.

The general policy of the law is opposed to sharp and summary judgment, where the party whose rights are involved has no opportunity to be heard.

MANDAMUS to compel the defendant to admit the relator to membership. He was a licensed physician, practicing in Buffalo, and a graduate of the New York Medical College. No question was made as to his possessing the usual qualifications for membership; but it was claimed that he had forfeited his right to admission by unprofessional conduct, in advertising, through the public journals, his claims to peculiar skill in the treatment of asthma, consumption and bronchitis, by the new mode of medicated inhalation, in aid of the known and usual remedial agents. It was claimed by the majority of the society that such advertisements were condemned as acts of empiricism, by the code of medical ethics adopted in the by-laws and regulations of the society; and that, though the objectionable practice had been discontinued by the relator, it was cause for the disfranchisement of a member, and, therefore, ground for the exclusion of an applicant.

A peremptory mandamus was ordered at the Special Term by Judge DAVIS, and his decision was affirmed at the General Term. The appeal is from the order of affirmance.

*James A. Allen*, for the relator.

I. The admission of the relator is a matter of strict right.

As a licensed physician of the county, it was his duty to apply for membership in the medical society, and on failure to do so, after proper notice, he forfeited his license, and became subject to the disabilities of unlicensed physicians. (1 R. S., 856, § 1, 4th ed., tit. 7, ch. 14, part 1; see Laws of 1844, ch. 275, § 4.)

The object for which medical societies are constituted is declared to be "the diffusion of true science, and particu · larly the knowledge of the healing art." (See preamble to act of April 10, 1813, ch. 94; 1 R. S., 1204, 4 ed.)

The law intends that every physician shall become a member of the society, and requires the society to admit him. The applicant being regularly qualified to practice cannot be rejected by the society, except for cause which would be sufficient to expel, in the manner provided by law. (*Ex parte Paine*, 1 Hill, 666; *People ex rel. Gray* v. *Medical Society of the County of Erie*, 24 Barb., 577; 1 R. S., 856.)

II. Independent of the statute, the power of the society to disfranchise remaining as at common law, this power is carefully defined and restricted to three cases.

1. Offenses against the corporator's duty to the corporation, as a member of it.

2. Offenses of a heinous, infamous character, affecting the corporator's duty as a subject, being indictable at common law.

3. Offenses compounded of the two. (Grant on Corporations, 264; 2 Kent Com., 297, 299; 24 Barb., 578; *Commonwealth* v. *St. Patrick Benevolent Society*, 2 Binn., 448; *Rex* v. *Richardson*, 1 Burr., 538; Bac. Abr. Corp. E., 9; *Rex* v. *Town of Liverpool*, 2 Burr., 732; *Fawcet* v. *Charles*, 13 Wend., 476.)

Before the second cause can be made available there must have been a regular conviction of the offender at common law.

The third cause must consist of an offense indictable at common law, and a portion of the authorities require an actual indictment.

The first cause is excluded, in this case, by the fact the relator was never a member of the society.

III. Suppose, against authority, that a mandamus to admit differs from a mandamus to restore (Grant on Corp. p. 247), and that, on return to the former, the society may show that while, at the time the diploma was granted, the applicant was duly qualified, since the granting thereof he has ceased to be a fit and proper person to become a member. The burden of proof is with the society, and it must show that it has put the relator on his defense, and given the proper notice. (*King* v. *University of Cambridge*, 2 Ld. Raym., 1347; Grant on Corp., 245, 246, 248; *Regina* v. *Bailiff, Burgesses, &c., of Gippo*, 2 Ld. Raym., 1240; *Rex* v. *Town of Liverpool*, 2 Burr., 734; *Bentley's Case*, Str., 557; 2 Ld. Raym., 1334; *Com.* v. *Penn. Benf. Inst.*, 2 S. & R., 141; *Com.* v. *Guard. of Poor*, 6 S. & R., 475; 2 Kent Com., 298.)

The society must show, in particular detail, affirmatively, that all the proceedings were regularly and legally taken and conducted. (*Green* v. *Af. M. E. So.*, 1 S. & R., 254; *Rex* v. *Mayor of Liverpool*, 2 Burr., 732; *Com.* v. *Guard. of Poor* (*supra*); *Bagg's Case*, 11 Coke, 99; 4 Res., and note (1).

On the same authorities, the relator was entitled to present and advocate his claims before that body which assumed to exercise the function of rejecting his application.

The grounds of exclusion must affirmatively appear amply *sufficient in law*. The legal sufficiency of the alleged grounds will be adjudicated by the court. (*Rex* v. *Richardson*, 1 Burr., 540; *Rex* v. *Town of Liverpool*, 2 Burr., 731; *Regina* v. *Bailiffs, &c., of Gippo*, 2 Ld. Raym., 1240; *Rex* v. *Dr. Askew*, 4 Burr., 2189; *Rex* v. *Barker*, 3 Burr., 1266; *Green* v. *Mayor of Durham*, 1 Burr., 131; *Com.* v. *Guard. of Poor*, 6 S. & R., 475, 1 S. & R., 254; *Fuller* v. *Plainfield Acad. Sc.*, 6 Conn., 546.)

IV. The society was legally incapable of restraining by a by-law, under penalty of disfranchisement, a member from giving publicity to his professional calling by an advertisement or card.

*The power to make by-laws relative to the admission and expulsion of members gives to the society no right of general legislation over the personal conduct of members. The power to make by-laws, in its exercise, is to be limited to the accomplishment of the object of its creation. (See Ang. & Ames on Corp., 268; 2 Kent, 298; Grant on Corp., 76; see 24 Barb., 575.)

*Henry W. Rogers* and *E. Carlton Sprague,* for the appellants.

1. The conduct of the relator, as established in the case, was in gross violation and contempt of the code of ethics, by which the professional standing of gentlemen of the medical profession ought to, and should be determined; and his application to be admitted a member of the society was, for that reason, properly rejected.

The defendant, in deciding upon the application of the relator, acted as a *quasi* judicial body, exercising an ample discretion, vested in it by the act under which it is incorporated, and this court, if it can interfere at all, will not do so, unless a case is made such as would justify it in interfering, upon mandamus, with the decision of any other judicial body upon a question addressed to its judicial discretion. (Ch. 94, Laws of 1813, §§ 1, 14; 3 R. S., Edm. ed., pp. 710, 713 (Pamphlet, pp. 17 and 19); ch. 14, part 1, R. S., tit. 7, §§ 1 to 7 (Pamphlet, pp. 12 and 13); 3 Black. Com., 110; Ang. & Am. on Corp. (4th ed.), ch. 4, § 118; Id., ch. 10, §§ 325, 326, 350 and 357; Id., ch. 12, §§ 408, 409, &c.; 2 Kent Com., 297, &c.; 2 Johns. Cas., 217, *et seq.,* note; 3 Wend., 426; 13 id., 473; 19 id., 56; 1 Hill, 665; 2 Denio, 192; 2 Barb., 417; 12 id., 217, 446; 13 id., 440; 24 id., 570; 25 id., 73; 13 How., 277; 1 Kern., 563; 8 Peters, 291; 11 How. U. S. R., 272.)

PORTER, J. The relator was a practicing physician in the county of Erie. He had received a thorough medical education, and, in virtue of his diploma from the New York Medical College, was entitled to practice, in any part of the State, the profession to which he had dedicated his life. The statute imposed on the president of the county medical society the duty of notifying him to apply for admission. For some cause, not disclosed in the papers, that duty had not been discharged; though, at the time the present proceeding was instituted, the relator had been in active and successful practice, in the city of Buffalo, for a period of about seven years. In June, 1859, he made application for admission, and proposed to comply with the conditions of membership, and to subscribe to the conventional rules and regulations adopted by the society for the government of its members. His diploma was presumptive evidence of his professional qualifications; and, so far as the case discloses, his private character was irreproachable. Upon these facts, his legal right was clear. He claimed the franchise of a corporator, to which he was in law entitled, unless excluded by the operation of some valid regulation or by-law of. that particular society. (*The People* v. *The Medical Society of Erie*, 24 Barb., 570, 577.) The only qualifications for admission, required by the by-laws, were: that the applicant should be a " physician or surgeon, residing in the county of Erie, of temperate habits, good moral character, and legally authorized to practice physic or surgery in this State." (By-laws, art. 5, sec. 1.) That he possessed these qualifications was not denied. The sole ground on which his application was rejected, was that, at an antecedent period, he had not observed certain conventional regulations, which this society had borrowed for the government of its members from the American Medical Association, entitled " Code of Medical Ethics." One of the by-laws provides, that this code " shall be, and hereby is adopted by this society, and shall be scrupulously adhered to by each and every *member* thereof; and any departure from the true spirit and meaning of said code of ethics shall

subject every such *member* to the discipline of this society."
(By-laws, art. 7, sec. 9.)

The regulations embodied in the so-called code are admir-
ably framed, and commend themselves to every reader, as
tending to raise to a still higher elevation, the character of
the learned and honorable profession to which they were
submitted for approval and adoption.   They are not limited
in their scope to the range of moral obligation, but embrace
express rules of conduct, in personal, professional and public
relations.   They are regulations in the various departments
of morals and manners, of courtesy and etiquette, of deli-
cacy and honor.   They bind those who pledge themselves
to their observance, but cannot be recognized in law, as
conditions precedent to the exercise of an honorable pro-
fession, by learned, able, and upright men, who have not
agreed to abide by them.   The non-observance of such
regulations *may be made* cause for exclusion or disfranchise-
ment; but it must be either by the agreement of parties or
by the exercise of the law-making power.

The applicant was not a member either of the American
Medical Association or of the Erie County Medical Society,
at the time of his alleged deviation from the formulas pre-
scribed by these conventional rules.   He was under no legal
obligation to observe them, and had neither actual nor con-
structive notice of their existence.   Those who were *mem-
bers* of the society, could not lawfully be expelled for
*antecedent* deviation from the code. (*Fawcett* v. *Charles*, 10
Wend., 477.) . Much less could such deviation be alleged, as
cause for exclusion, against one who never agreed to be
bound by it, and as to whom it was not merely an inopera-
tive but an unknown law.

As the relator demanded admission to the enjoyment of a
franchise to which he was presumptively entitled, his ex-
clusion could be justified only by facts repelling the
presumption that he was duly qualified for admission, or
by extraneous facts, showing that, if his application was
granted, there were then subsisting causes, making " a clear
case," for immediate expulsion. (*Ex parte Paine*, 1 Hill, 665.)

The burden was upon the appellant to establish, affirmatively, the existence of such present cause for expulsion. The society waived the right of making a return and taking a formal issue on the claim of the relator, to be determined as matter of fact by a jury, under the direction of the court; but submitted its objections in the form of affidavits, which failed to establish cause either for exclusion or expulsion.

The only *specific fact* alleged in the opposing affidavits, as ground of objection, was the publication by the relator of a professional advertisement, which was inserted in one or more of the Buffalo journals in May, 1855, and discontinued in January, 1857, more than two years before his application was presented. It is charged that the printing of this notice was an act of empiricism, and in conflict with the code of ethics adopted by the Erie County Medical Society.

There is nothing in the terms of the advertisement from which any inference can justly be drawn against the relator, in respect either to his personal character or his professional skill. There is no suggestion, in the affidavits, that any of the statements of fact contained in the notice are untrue, and there is nothing in its contents inconsistent with perfect good faith on the part of the relator. It refers to the treatment of bronchitis, asthma and consumption, as a special department of the profession to which he had directed his particular attention; and it alludes to his use of the method recently introduced, of medicated inhalation, through an instrument appropriate to that purpose, in aid of such general treatment as experience had proved to be beneficial in that class of diseases. It is not denied that the relator possessed peculiar skill in this department of the profession; and the case discloses the fact that the method of auxiliary treatment, introduced by him in the county of Erie, was not only successful in his own practice, but was adopted, with beneficial results, by members of the county society, of high professional standing, and that it was accepted by a large proportion of the physicians of western New York.

If, at the time this remedy was introduced, he had been a member of the county society, or of the American

Medical Association, he would not have been at liberty to direct attention, through the medium of the public journals, to the benefits resulting from its use. This would, perhaps, have been unfortunate for those who were suffering, in that vicinity, from this particular class of diseases; but it is undoubtedly true, that the suppression of such an advertisement would have been more considerate toward his professional brethren, and more in accordance with the rules of delicacy and good taste. But an error in this respect, by one who had no notice of the society regulation, is not cause for disfranchisement. The act of the relator was neither immoral nor illegal. It was no violation of the by-laws; for, as to him, they were wholly inoperative. It was no *present* cause for exclusion; for the publication of the objectionable notice had been discontinued for more than two years. When he applied for admission, he proposed to become bound by the by-laws; and this the society refused to permit, for the sole cause that he had not observed them before they became rules of conduct for him. " Where there is no law, there is no transgression." The relator, therefore, had been guilty of no legal wrong which could bar his claim to the franchise.

We entertain no doubt that the county societies may still exercise the common law power of expulsion, notwithstanding the remedy provided by statute, which we regard as merely cumulative. But they can exercise this jurisdiction only in case of offenses recognized by the common law as cause for expulsion. Of these there are but three; as Lord MANSFIELD held, in the case of *The King* v. *The Mayor of Liverpool*: 1. Violation of duty to the society, as a *member* of the corporation. 2. Offenses as a *citizen* against the laws of the country. 3. Breach of duty, in respect alike to the corporation and the laws. (2 Burr., 732.) Neither of these causes of exclusion existed against the relator; and if he had been admitted to membership, he would not have been subject to expulsion for the supposed antecedent offense, by a vote of the majority of the members, under the seventh and eighth articles of the by-laws.

No cause existed for his expulsion and disfranchisement, under the provisions of the general statutes. To subject him to a penalty so harsh and severe, he must have been presented on formal charges, by a two-third vote of the society, and convicted by the county court "of gross ignorance or misconduct in his profession, or of immoral conduct or habits." (1 R. S., 452.)

It is urged with great force and variety of illustration, in the able argument submitted in behalf of the society, that the code of ethics incorporated in its by-laws is retroactive in its operation, and furnishes an absolute rule of conduct, by which every physician is bound from the time he enters upon the practice of his profession, whether he was or was not a member of the associations by which it was adopted as a standard of professional conduct. In this view we cannot concur. The clause of the medical code on which the appellant mainly relies to justify the exclusion of the relator, is in these words: "It is derogatory to the dignity of the profession to resort to public advertisements, or private cards, or handbills, inviting the attention of individuals affected with particular diseases, * * to boast of cures and remedies, to adduce certificates of skill and success, or to perform any similar act. These are the ordinary practices of empirics, and are highly reprehensible in a regular physician." (Art. 1, sec. 3.)

This canon of the code adopted by the society, expresses the judgment of those who framed it; but it has the force, neither of a general law, nor of a rule of private morality. Those who assume the obligation are bound by it; but none beside. Neither the general statute, nor the by-laws of the society, make the *antecedent* observance of this regulation a condition of membership.

We entertain no doubt that the society would have arrived at the same conclusion, if the form of the proceeding had been such as to give the relator an opportunity to be heard. Of the committee of five, to whom his application for admission was referred, four, after a personal conference with the candidate, united in recommending his admission. The by-laws prohibited the appearance of the applicant before the

society prior to admission. Seventeen members were present when the vote was taken on the adoption of the report. Six votes were cast in his favor, and three against him, the other members not voting. When the application was renewed, in January, 1862, a motion was made to lay it on the table at once; the effect of which was, under the by-laws, to cut off all debate. (By-laws, art. 4, sec. 9.) The motion prevailed by the vote of a majority of the members.

This division of opinion among the gentlemen composing the society, has cast upon the courts the duty of passing judgment on the legal right of the relator. We think no cause existed which, in law, would justify his exclusion.

When a party, having a clear presumptive title, applies to be admitted to the exercise of a corporate franchise, the application should not be denied, unless the right of immediate expulsion be plain and unquestioned. The general policy of the law is opposed to sharp and summary judgment, where the party whose rights are in jeopardy has no opportunity to be heard in his own defense. (*Bagg's Case*, 11 Coke, 99.)

The relator was entitled to admission, and the order of the Supreme Court should be affirmed.

All the judges concurring, the order was affirmed, with costs.