THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHAUNCEY P. MEADS, Respondent, v. GEORGE A. McDONOUGH, as Commander of ALPHA LODGE, No. 1, OF THE ORDER OF THE KNIGHTS OF SOBRIETY, FIDELITY AND INTEGRITY, and Others, Appellants.

*Fraternal societies — expulsion therefrom, involving the loss of property rights — the trial should be by the whole body, on notice to all of the purpose of the meeting — slander of the society justifies expulsion — a brother of a complainant cannot try the charges.*

Where the expulsion of a member from a fraternal society is attended not only with the loss of social privileges, but also with that of property rights, strict proof will be required that he was regularly expelled. He is entitled to a fair trial after due notice before an impartial tribunal, and if the method of procedure is not regulated by the by-laws of the society, such procedure should be analogous to that ordinarily observed in judicial proceedings, at least so far as to promote substantial justice.

Where the by-laws of the society do not authorize the trial of a member by a committee thereof, he must be tried by the body of the society.

Where, under the by-laws, the members of the society can only recommend expulsion, while the power to expel is in the officers, a member cannot be expelled by a vote of the members of the society, acting upon the report of a

committee which has taken the evidence and decided the facts, and without reporting the evidence has recommended expulsion.

Where a meeting is held, designed to consider charges made against a member of such a society, or to vote upon his expulsion, the notice of the meeting should indicate specifically its purpose, and should be sent to all the persons constituting the body in which the power of expulsion is vested.

*Semble*, that a charge that a person has slandered a society of which he is a member, will, if proved, justify his expulsion, but the fact that a member has said sharp and unjust things against his associates, and that his conduct in other respects has been annoying and offensive, will not justify his expulsion where the loss of property rights is involved in it.

A trial of a member is not fair where a brother of one of the prosecutors making charges against such member is a member of the committee appointed to try the charges.

APPEAL by the defendants, George A. McDonough, as commander of Alpha Lodge, No. 1, of the Order of the Knights of Sobriety, Fidelity and Integrity, and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 2d day of January, 1896, upon the decision of the court, rendered after a trial at the Onondaga Special Term.

*D. F. McLennan*, for the respondent.

*John W. Hogan*, for the appellants.

Judgment affirmed, with costs, on the opinion of VANN, J.

All concurred.

The opinion of VANN, J., was as follows:

VANN, J.:

The defendant, Alpha Lodge No. 1 of the Knights of Sobriety, Fidelity and Integrity, is a corporation organized under the act relating to fraternal and beneficiary societies, and the other defendants are officers of the order. (Laws of 1889, chap. 520, p. 711.) The object of the organization, as declared in its constitution, " is to combine the efforts of all its members with the view to efficient mutual relief, aid and systematic contributions of benevolence, and charity, during their lifetime, and to their respective families, from time to time, when rendered necessary by disability or death." It consists of a single supreme lodge, or governing body, composed of delegates

from subordinate lodges, and a large number of local lodges, separately incorporated.     The supreme lodge is the law-making power for the entire association.    Each lodge, at short intervals, collects from its assessable or beneficiary members, constituting what is known as the participating rank, certain assessments, and, in case of disability or death, pays a specified sum, the amount of which is dependent on the amount of assessments, which are graded according to age, to the member or his family, or, at the end of seven years, a gross sum to the member himself, if living.    As evidence of the contract between the society and its members a certificate of membership is issued to each.

On the 17th of July, 1889, the relator, Chauncey P. Meads, received a certificate of membership in the participating rank, and thereby became a beneficiary member of the local lodge known as Alpha No. 1.    He has ever since paid or tendered all assessments as they became due, amounting in the aggregate to a considerable sum of money.

On the 25th of August, 1892, a meeting of the lodge was held, the relator not being present, although he had received a general notice to attend, but no notice that any business would be transacted in which he was especially interested.    At that meeting charges in writing were preferred against him by an honorary member, alleging that he had violated his duty as an officer by refusing to sign certain checks until a sum of money that he claimed was due him should be paid, and that he was thereby guilty of " dishonest conduct, or conduct unbecoming a brother; " that later, and after he had been deposed from office, he refused to obey " the behests" of the supreme convention of the order by boisterously declining to leave the council chamber, where he had no right to be, until he was ejected by force; that he had maliciously assailed the order and its officers through the public press, charging that he had been rejected as an officer after a mock trial by star chamber ; that certain officers and members had made false, libelous and blackmailing statements, and false reports to the insurance department; that they had attempted to steal or illegally use the funds of the order, had mismanaged its affairs, and had been guilty of fraud and deceit; that after the insurance department had

exonerated such officers from intentional wrong, he further published in the newspapers, "falsely, willfully and malevolently" that certain officers of the order had been guilty of gross mismanagement and perjury; that afterward he had visited various lodges, villified the chief officers, denounced the general management, and "reiterated his former false statements."

At the same meeting a committee of five was appointed by the presiding officer to try the relator, and the next day a copy of the charges, with notice of trial, was personally served on him.   September 8, 1892, a new specification was added to the charges, alleging the disclosure by the relator of the secrets of the society, by publishing in the press the charges previously preferred against him, as aforesaid.   An active member named George Deland united in the amended specifications as a complainant, and verified the same by his oath.   This Mr. Deland, who thus actively engaged in the prosecution, was a brother of Cordie R. Deland, a member of the trial committee, and the two Deland brothers were sons of the officer who had appointed the committee originally, and who, without notice to the relator and in his absence, re-appointed the same members after said amendment to the specifications was made and it was known that the new complainant was a brother of one of the judges who were to pass upon the charges.   It does not appear that any resolution was passed by the lodge authorizing the committee to pass upon the amended charges, and there is no by-law authorizing the trial of a member by committee.

A copy of the amended charges, with notice of hearing, was served on the relator, who at the trial refused to plead and protested against the right of the committee to try him, but did not at any time object to any member thereof.   He offered no evidence and took no part in the trial except to protest against being tried by the committee, and denying its jurisdiction, upon the ground that one of the complainants was not an active member.   Evidence was given tending to sustain the charges, and the committee reported to the lodge unanimously finding the relator guilty upon eight out of the nine specifications, including the one last made, and in which George Deland had joined.   The lodge voted on the report of the committee, without taking evidence or hearing read what had been taken, to expel the relator, who was not present at the time, but had

been notified that a meeting would be held, in the same manner as all the other members had been notified. The object of the meeting was not stated in the notice. He was not notified, and, so far as appears, did not know that the question of his expulsion would be brought up or voted upon at that meeting, or that the committee would then make its report. The vote to expel was by the lodge, as such, without any separate vote by the officers, according to the by-laws, which provide that any officer or member of a subordinate lodge may be removed from his position, or expelled from his lodge, for cause, by a majority vote of the officers of the lodge, on a vote of recommendation of a majority of the members of such lodge, and that such decision shall be final and without appeal. The defendants claim that this by-law had been so amended at the date of the alleged expulsion as to provide for action by a majority vote of the members present and entitled to vote, but I am unable to find that such amendment had been lawfully made or that the constitution and by-laws had been complied with in the attempt to amend. Authority to make temporary amendments cannot be so construed as to embrace the right to expel. There were over forty members of the lodge entitled to vote, of whom eighteen, more than a quorum, were present, and all voted to expel except three, who did not vote at all. Seven out of the ten officers were present and voted, as members, in favor of expulsion, but they did not vote or take any action separately as officers.

The sole question presented for decision is whether the relator was lawfully expelled from the order, and in discussing it I shall assume that the evidence before the trial committee was sufficient to support the eight specifications sustained by their report. Whether the charges, if true, were all sufficient to justify expulsion is open to question and will be considered later.

The defendant lodge is not simply a social club, but is also an insurance company, with a surplus of $150,000 in its treasury for use as a reserve fund and in the payment of losses. The relator, when expelled, had a vested property right in that money, of which he could not be deprived without due process of law. In case of severe sickness he was entitled to receive for a certain period the sum of $25 per week. If he died, his family was to be paid

$500, and if he lived for seven years from the date of his admission, of which period nearly one-half had expired when he was expelled, he was to receive $1,000. He has, therefore, been deprived of a right of property of considerable value, for his expulsion involved the forfeiture of all pecuniary interest in the assets of the order. While courts are slow to look into such transactions of private corporations as affect no vested right that may be measured in money, they are prompt to interfere, upon proper application, when by an arbitrary or unlawful exercise of power a member has been deprived of that which costs him and is worth a definite sum of money. The business of life insurance through the medium of benefit societies is now carried on upon a vast scale, and many millions of dollars have been invested by persons of moderate means in social fraternities, in order to provide against the accidents of life and the certainty of death. It will not do to allow these valuable rights to be forfeited by the capricious or interested votes of those who will be benefited by the forfeiture, unless the method of procedure is in strict accordance with the law of the land or the reasonable by-laws of the association itself. As was recently said by an able writer upon the subject: "Courts are loth to adopt the rule that societies doing a life insurance business can expel a member for some infraction of a by-law regulating personal conduct and thereby cause him to forfeit his insurance for which he has perhaps paid for a long period, at a time too when, possibly from ill health or other reasons, he may not be able to replace the indemnity." (1 Bacon on Ben. Soc. & Life Ins. § 107.)

Where such serious results follow a deposition from membership, those who allege regularity of procedure in the effort to expel must be held to strict proof, for no presumption will be indulged in to support a forfeiture, which the law abhors. (1 Bacon, § 110; *People v. Medical Society*, 32 N. Y. 187, 193; *Pulford v. Fire Department*, 31 Mich. 458.) The relator was entitled to a fair trial, after due notice, before an impartial tribunal, and as the method of procedure was not regulated by the laws of the association, it should be analogous to that observed in ordinary judicial proceedings, so far, at least, as to promote substantial justice. (*Wachtel v. N. W. & O. Ben. Soc.*, 84 N. Y. 28; *Roehler v. Aid Soc.*, 22 Mich. 86.) The only trial, or opportunity for trial, that he had

was by committee, yet the by-laws authorize no such proceeding, and in the absence of a regulation to that effect the weight of authority requires trial by the body of the order. Mr. Bacon says: "The power of expulsion of members of a society, club or corporation, belongs to the body at large, and, in the absence of the clearest authority in the constitution and by-laws, cannot be delegated to a committee or officer." (§ 100.) Many cases are cited by the learned author in support of this position, from one of which the following extract is taken: "The transfer from the body of the society, where it properly belongs, to a small fraction of its members of so large and dangerous a power as that of expulsion, must appear, if it is claimed to exist, by the plainest language. It cannot be established by inference or presumption, for no such presumption is to be made in derogation of the rights of the whole body, nor is it to be supposed, unless it appears by the most express and unambiguous language, that the members of the society have consented to hold their rights and membership by so frail a tenure as the judgment of a small portion of their own number." (*Hassler* v. *Phila. Mus. Assn.*, 14 Phila. 233.)

Mr. Niblack in his work on Mutual Benefit Societies says: "The power of expulsion must belong to the society at large, unless, by the fundamental articles or some by-law founded on these articles, it is transferred to a select number." (§ 72; see, also, *Green* v. *Society*, 1 S. & R. 254; *State* v. *Chamber of Commerce*, 20 Wis. 63; *State* v. *Miller*, 66 Iowa, 26.)

There are respectable authorities which hold that where no mode of procedure for the conduct of a trial is specified, the society may adopt such mode as it pleases, subject only to the limitation that it must be fair, even including a trial by committee. (*Spilman* v. *Home Circle*, 157 Mass. 128; *Pitcher* v. *Board of Trade*, 13 N. E. Rep. 187.) I regard such practice as loose and dangerous, and refuse to adopt it in the absence of a controlling authority in this State. It may well be that a corporation may delegate to a committee the power to take the evidence and report it to the members, for them, duly assembled for the purpose, to act upon, but the trial itself, and the decision of the issue, should be by the whole and not by a small part. (*Loubat* v. *Le Roy*, 40 Hun, 546.) The only trial of the relator was by a committee that not only took the evidence, but decided the facts,

and, without reporting the evidence, recommended expulsion. The association simply fixed the penalty by voting to expel, without hearing the evidence. Yet, according to the by-laws, the power to expel had been confided to the officers, the members having power simply to recommend expulsion. The officers, as such, not only did not vote to expel, but they did not conduct the trial nor hear the evidence. Furthermore, the vote was taken without due notice to the relator or to the officers or members. General notice of the meeting was given to the officers and members, as usual, without specifying the nature of the business that was to be transacted. The relator had no other or different notice. Thus, even if the previous proceedings had been regular and legal, at the culminating point, when a judgment of forfeiture was to be pronounced, not only was the relator suffered to remain ignorant of what was going on, but the members themselves, who were to take part in the decision, were not notified of the important business that was to come before them. Although the relator had seen fit to take no part in the trial before the committee, he may have desired to be heard, and he had a right to be heard by the tribunal that was to pass final judgment upon him. If he had been heard, the result might have been different.

In *Loubat* v. *Le Roy* (40 Hun, 546) by the constitution of a club the power to expel was vested in a governing committee, which appointed a sub-committee to investigate and report the facts relating to the alleged misconduct of a member. Notice was given to him, and he appeared and submitted a statement to the sub-committee, which afterwards reported to the governing committee, and the latter, without further notice to him, passed a resolution of expulsion. It was held that the failure of the governing committee to give him notice of the meeting and an opportunity to be heard deprived the resolution of expulsion of all legal effect as to him.

If all the members had been notified that the lodge was to take action upon the relator's case, instead of only eighteen, the whole membership might have attended and a majority of the votes have been cast in his favor. "Members who might think that their attendance was unnecessary for the usual routine of business, will, perhaps, feel it their duty to attend a matter involving the rights of a fellow-member." (Niblack, § 71.) Where a meeting was called

for "special business," or "to take into consideration the conduct of a member," the notice was held insufficient to justify expulsion at that meeting, although the member proceeded against was present. (*Marsh* v. *Huron College*, 27 Grant's Ch. 605; *Cannon* v. *Toronto Corn Exchange*, Id. 23; *Dean* v. *Bennett*, L. R. [9 Eq.] 625.)

The courts hold that the notice should state distinctly what the object of the meeting is. Where the power of expulsion is in the society at large, notice that it is intended to expel, must be given to all the members of the society, and where the power is in a select body, each member of such body must be so notified. (Niblack, § 70.) If the action of the society was a part of the trial, it was a trial without notice and a conviction without evidence. Moreover, some of the charges of which the relator was found guilty by the trial committee were insufficient to justify the expulsion of a member having property rights in the assets of the association. It has been held that an accusation that a member was guilty of "slander against the society," "villifying a member," "unprofessional conduct," "disrespectful and contemptuous language to associates," "reporting that the lodge would not pay and never intended to pay," "offense against law," "ungentlemanly conduct," etc., would not warrant his expulsion. (*Roehler* v. *Mechanics' Aid Soc.*, 22 Mich. 86; *Commonwealth* v. *St. Patrick's Soc.*, 4 Am. Dec. 453; *Mulroy* v. *Knights of Honor*, 28 Mo. App. 463; *People ex rel. Bartlett* v. *Med. Soc.*, 32 N. Y. 187; *Fuller* v. *Plainfield Academy*, 6 Conn. 532; *Erd* v. *Bavarian Assn.*, 34 N. W. Rep. 555; *Butchers' Beneficial Assn.*, 38 Penn. St. 298; *State* v. *Georgia Med. Soc.*, 38 Ga. 608.)

The relator may have said sharp and unjust things about his associates, and his conduct in other respects may have been annoying and offensive, so that from a purely social club his expulsion for misconduct of that nature would have been justifiable. But a member cannot be expelled for such reasons from a business association organized, in part at least, as a mutual insurance company, because it would be unreasonable to thus forfeit important rights of property. The forfeiture would be in the nature of confiscation and would require express authority by statute. A by-law would not warrant it, for all by-laws must be reasonable. (Angell & Ames on Corp. § 347; 2 Am. & Eng. Ency. of Law, 173.) The failure to

pay dues, fraudulent conduct toward the society, the conversion of its property, or any act or omission so directly affecting its welfare as to threaten its existence or success, would, of course, furnish just cause for expulsion. Perhaps other and less grave offenses might also be included, but not, according to the authorities, the libel or slander of members, who can seek redress in the civil tribunals and do not need the extreme remedy of excluding the offender from all share in assets arising partly from his own contributions. So, mere violations of good taste or propriety by a member cannot be made the basis of removal from a business organization. Even the betrayal of secrets of a secret society of that kind would scarcely be adequate cause for expulsion, where the only disclosure was through the publication of charges preferred against the member himself. That would hardly be a secret within the meaning of a by-law imposing the duty of secrecy, for it would not be material or vital to the society itself, as its pass words or ritual might be. Clearly transactions of such an order are by implication removed from the ban of secrecy. The right to defend implies the right to disclose the charges. The certificate of membership issued to the relator might have been made public by him, for it was a business contract. As the evidence of membership might be disclosed, why might not the means adopted to deprive him of membership? Both were personal to him, and neither can properly be regarded as a secret of the order. If everything is secret, how can persons be informed as to the nature and object of the order, so as to be induced to join? Upon the trial the defendant officers voluntarily produced and freely exhibited the book of minutes of the lodge, said to be a complete record of all its transactions, without apparently regarding it as a betrayal of secrets.

The refusal of the relator to sign certain checks as treasurer, if a violation of duty, was cause for a motion as an officer, not for disfranchisement as a member.

The charge that the relator slandered the lodge itself was probably sufficient, as that might impair its efficiency and prove a permanent injury. The willful circulation of false and injurious reports about the organization differs in principle from an attack upon its members, as the former involves disloyalty, and a serious violation of corporate duty.

Upon charges, the most of which are condemned by the courts as inadequate upon which to base an expulsion, the relator was expelled, yet, as at least one charge was adequate, probably no relief can be based upon this ground. The fact, however, is not without significance as characterizing the proceedings, and suggesting hasty action, caused by the excitement of the hour.

All of the authorities agree, and the learned counsel for the defendants concede, that the trial must be fair, or the expulsion cannot stand. This implies that it shall not only be fair in form, but also that it shall take place before an impartial tribune. The trial in this case took place, so far as any consideration was given to the evidence, before a committee of which a brother of one of the prosecutors was a member. That committee may, in fact, have been entirely fair and have acted only from the most disinterested motives, but what is the legal presumption? No judge of our courts can sit if he is related to any party to the controversy within the sixth degree of consanguinity or affinity, even with the consent of all the parties. (Code Civ. Proc. § 46; *Oakley* v. *Aspinwall*, 3 N. Y. 547.) Mr. Cordie R. Deland, in acting as a member of the trial committee, acted as a judge, not in the official sense meant by the Code, but in the sense that he was to hear fairly, and determine justly, a charge against a fellow-member, involving both property rights and private character. It may be, that he has that judicial temperament that would enable him to do this, although his own brother was a complainant, but the presumption arising from common experience is to the contrary. He could not, under like circumstances, have sat as a juror in a court of law to try the most trivial action, yet his decision has aided in depriving the relator of a valuable property right. So far as the principle is concerned, the committee might as well have been composed entirely of brothers of the prosecutor. While it is true that the complainant Deland was not a party in the sense that he was to be benefited by the result any more than the members generally, it is none the less true that he preferred the charges, swore to all of them, and that they were tried before his own brother, who voted to find the relator guilty. While I can find no controlling authority upon this question, I cannot regard such a trial as fair. (*Loubat* v. *Le Roy*, as reported in

15 Abb. N. C. 1, was reversed in 40 Hun, 546.) It is opposed to natural justice to deprive a man of his property under such circumstances. The common judgment of mankind is that a brother would not be impartial in such a contingency, no matter how hard he strove to do his duty. "Blood is thicker than water," and the sympathy arising from ties of near kindred tends to pervert the judgment and bias the action of the most honest man.

The claim that the relator should have exhausted his remedies within the society by bringing an appeal to the supreme lodge before applying for this writ, cannot be sustained, for the by-laws gave him no right to appeal. The further claim that he has waived any of his rights is not supported by the authorities. (_The People_ v. _Mus. Union_, 118 N. Y. 101; _Downing_ v. _St. Columba's Society_, 10 Daly, 262, 264; _Marsh_ v. _Huron College, supra_; _Cannon_ v. _Toronto Corn Exchange, supra_; Bacon on Ben. Soc. § 102.)

There must be judgment restoring the relator to membership, with costs.