## BARRY v. THE PLAYERS.

(Supreme Court, Special Term, New York County. July, 1911.)

1. CLUBS (§ 5*)—MEMBERSHIP—EXPULSION—REINSTATEMENT BY MANDAMUS.
    The courts will not interfere with the exercise of the paramount authority in a corporation formed for social purposes in expelling a member, except where there is a moral culpability or where the decision is arrived at from fraud, hostility, or bias, and where a member of such organization, connected with the dramatic and kindred professions, published in a periodical an article containing reflections on the profession which was resented by a large number of the members, and for which he was expelled, the court would not, on mandamus, order his reinstatement.
    [Ed. Note.—For other cases, see Clubs, Cent. Dig. §§ 3, 4; Dec. Dig. § 5.*]

2. CONSTITUTIONAL LAW (§ 90*)—EXPULSION OF CLUB MEMBER—REINSTATEMENT.
    A member of a corporation, formed for social purposes, having been expelled for publication of an article in a periodical alleged to reflect on the dramatic profession to which many members belonged, was not entitled to reinstatement by virtue of Const. art. 1, § 8, providing that every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right, and that no law shall be passed to restrain the liberty of speech or of the press.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 172; Dec. Dig. § 90.*]

Application by Richard Barry for mandamus against the Players, a social organization, to compel petitioner's reinstatement as a member. Denied.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Henry W. Bridges, for the motion.

Joseph F. Daly, opposed.

GIEGERICH, J. This is an application for a mandamus to compel the defendant corporation to reinstate the relator as one of its members. The defendant is a social organization, whose membership is largely made up of persons connected with the dramatic and kindred professions. In March, 1911, the relator published in a periodical an article containing the following:

"Very few persons on the stage know how to think. In fact, few of them know how to feel, though they all make some sort of bluff at it. Education is unnecessary; general association with humanity is tabooed, and few of the profession read enough to have any grasp on things of the mind. So the matter of sex never enters into the question of pay, except it be to favor the woman."

Subsequently he was served with notice from the respondent society that he had been charged with conduct unbecoming an associate of members of the dramatic profession in publishing such a statement, and calling upon him to answer such charges on a date specified. In reply to this notice the relator sent the following letter:

"39 West 67th Street, New York, April 29, 1911. Gentlemen: Your secretary notifies me that I am required to answer a charge of libel brought against me by certain unnamed accusers. In reply I wish to say: First. I do not find in the club's constitution anything which would make my professionable writing amenable to any club censorship. I understand that there is an unwritten law that no dramatic critic shall become a member, but as I am not a writer of dramatic criticisms that cannot apply to me. Moreover, the paragraph taken as the basis for this supposititious charge is from an article that mentions the dramatic profession only incidentally, and I herewith submit its entire text, so that you may not be led to conclude falsely that I have written an article to occasion ill feeling among members of the club. Second. Even as it stands this paragraph is not a libel. Neither the Players Club nor any member of it is mentioned. In fact, I thought I specifically excepted the members of this club by the use of the word 'few.' It seems to me that my friends in the club should consider themselves the 'few' and not the 'many' when they read this, if they do me so much honor as to read it at all. Nothing has ever astonished me more than to find some of the 'few' willingly and indignantly placing themselves among the 'many.' Third. I have always understood that in founding the Players Club Mr. Booth, to whose memory I heartily subscribe allegiance, had a prime motive in attempting to thus correct the very evils in the dramatic profession to which I have called attention. Therefore, gentlemen, I am loath to believe that you will decide that I have infringed any of the laws of the club, written or unwritten. Sincerely yours, Richard Barry. To the Board of Directors, Players Club."

On the date set for the hearing of the charge the board of directors of the defendant organization, two-thirds being present, after considering the relator's written reply and giving him an opportunity to be heard orally, unanimously agreed that the publication above referred to expressed a contemptuous opinion of the members of the theatrical profession, and that such publication was unbecoming an associate of the members of that profession and was false and libelous, and unanimously adopted a resolution expelling the relator from the club. The constitution of the defendant (article XII) provides that:

"Any member may be suspended or expelled for cause by a vote of two-thirds of all the members of the board of directors; one month's previous notice in writing having been given to the member, with a copy of the charge preferred against him."

No claim is made on behalf of the relator that there was any irregularity in the proceeding by which he was expelled. He seeks reinstatement on the ground that the statement complained of does not constitute, within the meaning of the article of the constitution above quoted, legal cause for his expulsion.

[1] As the learned counsel for the defendant points out, it has been the rule, at least since the time of Lord Romilly, that in the case of clubs formed entirely for social purposes there must be some paramount authority to keep up their objects, and that the courts will not interfere with the exercise of that paramount authority except where there is moral culpability or where the decision is arrived at from fraud, hostility, or bias. Gardner v. Fremantle, 19 Weekly Reports, 256, 259; Hopkinson v. Marquis of Exeter, L. R. 5 Eq. 63. In the comparatively recent case of Stein v. Marks, 44 Misc. Rep. 140, 89 N. Y. Supp. 921, it was recognized as a well-settled rule that the courts will not interfere with the internal government of the affairs of either voluntary associations or membership corporations where the action complained of has been fairly taken in conformity with reasonable by-laws; and in People ex rel. Meads v. McDonough, 8 App. Div. 591, 599, 35 N. Y. Supp. 214, 40 N. Y. Supp. 1147, the court pointed out the difference between a business association and a purely social organization, observing that in the case before them the relator may have said sharp and unjust things about his associates, and that his conduct in other respects may have been of such character that from a purely social club his expulsion would have been justifiable, but holding, nevertheless, that the reasons were not sufficient for expelling him from a fraternal organization, in which membership carried certain financial benefits. None of the cases relied upon by the relator supports his claim to reinstatement. His argument that his fellow members should have regarded themselves as included within the exceptions referred to in the article he published is strained and wholly unsatisfactory. If the members of the defendant organization resented the sweeping and derogatory assertions he made concerning their profession generally, far be it from the court to hold that such resentment was groundless. In fact, if an expression from the court be permissible on this point, it would be that the spirit and tone of the relator's reply, as well as that of the original article complained of, abundantly warrant the sentiment he seems to have aroused among his associates. That there is among them a very general feeling of indignation against him is apparent from the extracts from the numerous letters of protest and criticism written to the board of directors about the matter.

[2] The further argument on behalf of the relator, that his expulsion was in derogation of the constitutional right secured to him by article 1, § 8, of the Constitution of the state of New York, which provides that every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right, and that

no law shall be passed to restrain the liberty of speech or of the press, cannot be considered seriously. If no member of a social club could be expelled for any act which he had a constitutional right to commit, no matter how unpardonable such act might be from a social standpoint or from the standpoint of a particular social organization, then manifestly it would be impossible to preserve the continued existence of organizations, the breath of whose life is congeniality and harmony in respect to matters wholly insusceptible of measurement or control by such instruments as constitutions and laws. The result reached in this case is not inconsistent with People v. Saint Franciscus Benevolent Society, 24 How. Prac. 216, relied upon by the relator. That case involved a pecuniary right; and, besides, there an attempt was made to impose conditions of *religious* conduct and observance in a society organized only for *charitable* and *benevolent* purposes, as the court took pains to point out.

The motion should be denied, with $10 costs.