In the Matter of JOEL WEINBERG et al., Petitioners, against JOHN E. CARTON, as President of Patrolmen's Benevolent Association of the City of New York, et al., Respondents.

Supreme Court, Special Term, Bronx County, May 23, 1949.

*David A. Fay* and *Saul I. Radin* for petitioners.

*James H. Tully* and *Truman H. Luhrman* for respondents.

EDER, J. The petitioners instituted this proceeding to compel their restoration to membership in the respondent " The Patrolmen's Benevolent Association of the City of New York ", which is a membership corporation organized and existing under the laws of this State. It has a constitution and by-laws, a copy of which has been furnished to the court. The constitution provides for officers (art. VII) and for a body called " Delegates " (art. VI).

Section 7 of article II provides: " Any member who by act or omission prejudicial to the best interests of this association upon the presentation of proof of said act or omission after a hearing at a regular meeting and found guilty by a two-thirds vote of members present shall forfeit all rights and benefits of this association."

This appears to be the only provision in the constitution and by-laws with respect to expulsion from membership in the organization.

Although the constitution and by-laws appear to be full and complete in other respects, they are sadly deficient in regard to protecting the rights of a member with respect to expulsion.

There is no regulating the filing of charges, the giving of notice with respect thereto, the taking of testimony, the right of representation by counsel, or the right of cross-examination.

Section 7 of article II constitutes the members of the association as the tribunal for the trial of charges and by the express language of this provision the power of expulsion is conferred

upon the members alone, viz., upon the association itself, which is the membership at large.

As has been mentioned, there is no provision regulating the filing of charges, with whom the same shall be filed, and as to the procedure to follow the filing, as to preliminary investigation and report, and as to preliminary action thereon as to whether the charges shall be entertained or rejected.

In the absence of an express provision in the constitution or by-laws, the power of expulsion belongs to the association, e.g., to the membership at large. By parity of reasoning, therefore, in the absence of any provision as to procedure regulating the filing of charges and subsequent preliminary procedure before trial, they must be filed with the members of the association, as a body, at a meeting of the association, and they, as such body, must prescribe the preliminary procedure.

In the instant case, at a regular meeting of the association held by the delegates on February 8, 1949, charges were made against the petitioners that they were guilty of acts of omission and commission prejudicial to the best interests of the association and immediate hearing thereon was directed by the respondent Carton, as chairman of the meeting in his capacity as president of the association.

No previous notice was given that charges would be filed; no opportunity was given to petitioners to have counsel present or to properly prepare to defend against the charges made.

Various objections were registered by petitioners as to the legality of the proceedings. Ultimately the hearing was adjourned to March 8, 1949. No formal notice was given to the members of the association that charges had been preferred against the petitioners seeking their expulsion as members of the association, or that a trial would take place for their expulsion as members, nor was any formal notice given to the members that the petitioners' expulsion as delegates of the association would be sought.

It is claimed by respondents that " effective notice " was given to all the members of the association with respect thereto in a printed pamphlet called " Finest ", to which reference will later be made.

The petitioners contend that their trial and expulsion by the delegates was and is illegal and void for the various reasons given by them, including the lack of power of the delegates to try and expel a member.

While some of the claims made by the petitioners appear to have their measure of merit, it is deemed unnecessary to detail,

discuss and determine them for the reason that this court is of the opinion: that the delegates were and are without power, under the provisions of the constitution and by-laws, to try and expel a member of the association and that this power of trial and ouster resides in the members of the association only, acting as a body, and that, therefore, the trial and expulsion of the petitioners by the delegates was and is illegal and void *ab initio.*

Attempt is made to sustain the trial and expulsion of the petitioners upon the claim that the power of expulsion is lodged in the delegates, as the representatives of the members, and reliance is placed upon section 9 of article VII, which reads as follows: '' With the exception of the election and removal of offices, the delegates shall possess all other powers of representation of the membership, *as provided in the constitution and by-laws.''*

In this connection it is argued by respondents:

'' The trial body was properly constituted. The next principle which comes into play is that the trial body must be constituted in accordance with the by-laws of the association, if there be any applicable, and in the absence thereof, in such a way as to protect the rights of those accused.

'' The trial body in the case of the association may not or may be the members of the association, depending upon whether the word 'Members ' in Article II, Section 7 means members or delegates.''

In the affidavit of Carton, president of the association, it is stated: '' *The members do not vote at the meetings of delegates.''*

Again: '' However, the section of the constitution (Art. II, Sec. 7) under which the charges herein were preferred against the petitioners states that a member shall forfeit all rights and benefits of the association if found guilty by a two-thirds vote of members present at a regular meeting. This provision is the only one in the constitution that suggests the possibility of a member voting at a meeting of delegates * * * ''.

Nothing in this statement supports the claim that by section 9 of article VII delegates have been vested with authority to represent the members at a trial of a member and have been given the power to vote for them, for expulsion. By the very language of this provision delegates possess only such power of representation of the membership '' as [is] provided in the constitution and by-laws '', and there is not a word therein which gives them the powers which they assumed and exercised against the petitioners.

In *People ex rel. Meads* v. *Alpha Lodge* (13 Misc. 677, affd. 8 App. Div. 591), it is held that the power to expel a member belongs to the society, and cannot be delegated to a committee, unless such delegation is authorized by the constitution and by-laws.

In Bacon on Life and Accident Insurance including Benefit Societies ([4th ed.] Vol. 1, p. 203, § 124) cited by VANN, J., in the *Meads* case (*supra,* p. 682) it is stated: " 'The power of expulsion of members of a society, club or corporation belongs to the body at large, and, in the absence of the clearest authority in the constitution and by-laws, cannot be delegated to a committee or officer.' "

In Niblack on Benefit Societies and Accident Insurance ([2d ed.] p. 138, § 67) also cited by Judge VANN, it is stated (p. 683): " ' the power of expulsion must belong to the society at large, unless, by the fundamental articles, or some by-law founded on those articles, it is transferred to a select number ' ".

In the instant case no such power was transferred or vested in the delegates.

Section 7 of article II requires a two-third vote of *members* (not " delegates ") to accomplish the expulsion of a member of the association. In the affidavit of Carton, president of the association, it is said that it could be shown that " the reference to members therein is implicitly to members who are delegates ".

This is a plain admission that there is no express authority in the constitution and by-laws vesting the delegates with the jurisdiction to entertain charges against a member, or to try and expel him, and, indeed, there is no such express power conferred upon them.

The premise of respondents therefore rests on inference or presumption that such power exists. Such a contention was advanced in *Hassler* v. *Philadelphia Mus. Assn.* (14 Phila. 233) and overruled. The case is cited with approval by Judge VANN in the *Meads* case (p. 683), and the following extract from the opinion, quoted: " 'The transfer from the body of the society, where it properly belongs, to a small fraction of its members of so large and dangerous a power as that of expulsion must appear, if it be claimed to exist, by the plainest language. It cannot be established by inference or presumption, for no such presumption is to be made in derogation of the rights of the whole body, nor is it to be supposed, unless it appears by the most express and unambiguous language, that the members of the society have consented to hold their rights by so frail a tenure as the judgment of a small portion of their own number.' "

It is fully established that the delegates, as such, were and are without power to act in any form with respect to matters pertaining to the trial and expulsion of a member of the association and that only the members, as a body, i.e., the membership at large, possesses this great power.

Respondents argue that though, as they construe section 7 of article II, only delegates are empowered to try members and vote for their expulsion, nonetheless, members who were present and who were not delegates were permitted to vote, and that this is sufficient to regard and uphold the trial and expulsion of petitioners as legal and valid.

This is, in effect, a plea of confession and avoidance. However, it does not aid the respondents. It is an admission of a lack of power in the delegates to act, *ab initio,* and cannot be avoided by the subsequent act of permitting some members, and who were not delegates, and who happened to be present, to participate in the meeting and action of the delegates.

This was a delegates' meeting and not a meeting of the membership at large. That the respondent Carton condescended to permit such members who happened to be present to participate in the delegates' meeting, though maintaining, basically, that only delegates could act and vote as to the trial and expulsion of petitioners, does not validate that which, at the outset, was illegal and void.

The inefficacy of this premise is immediately made manifest when it is considered that the association consists of 18,000 members of whom only 300 are delegates, an infinitesimal number of the whole membership, and that only some 300 were present and participated, delegates and nondelegates. " The trial itself, and the decision of the issue, should be by the whole and not by a small part " (*Mcads* case, *supra,* p. 683).

Again, if the membership at large was entitled to participate in the trial and in the vote for expulsion, then proper notice of the meeting and of their right to participate in the trial and in the vote for expulsion should have been given to them, and the appropriate and forthright method to assure delivery of such notice to a member would be to send such notice by registered mail, or, at least, by ordinary mail, and it would thus bring the attention of the member directly to the subject matter involved, and its importance.

This was not done. But it is claimed " notice " was given to all the members by means of an article which appeared in an issue of an pamphlet called " Finest ", printed and distributed by the association.

This pamphlet contains diversified topics relating to the police department, generally, and its contents are not confined solely to the affairs and matters of the association. In addition it contains photographs of various individuals and some social notes. Its appearance is molded to somewhat imitate a daily tabloid.

In this pamphlet there appeared an article that " delegates " would, for the first time in the history of the association, act to expel six (unnamed) " delegates " of the association and inviting patrolmen to attend the meeting of *delegates,* at which meeting " expulsion proceedings against six delegates are scheduled for the first time in PBA history ", and stating, further: " Six delegates will face dishonorable dismissal from the PBA on that day ".

Not a word is therein contained that the meeting would be held for the trial and expulsion of the petitioners as members of the association, nor were the names of the accused given. Nor were the invitees informed that they had a right to participate in the meeting and in the trial and in the decision as to expulsion of the accused and invited to attend for that purpose.

This article and invitation to attend was not the " notice " to members constituting a trial body, with power of expulsion, as the law contemplates and imperatively requires. It was merely a " news item " and the invitees were asked to attend merely as onlookers in the status of spectators, for, as is stated in Carton's affidavit: " The members do not vote at the meetings of delegates ".

To assert, as respondents do, that this news item " gave effective notice " to all of the members of the impending hearing of the charges filed against petitioners and of their right to participate in the trial and in the vote to expel, is sheer folderol and is devoid of all legal stability.

If the petitioners had friends among the membership at large they might have been sufficiently interested and concerned to attend and participate if the names of the accused had been disclosed and might have voted in their favor, sufficient in number to prevent a two-thirds vote for expulsion, whereas, since the names of the accused were withheld, they might, therefore, have ignored the item or merely glossed it over.

On the other hand, had the names of petitioners been revealed, their friends in the association, who were members, might, indeed, have been greatly concerned, where the result of the vote might mean the imposition of a capital sentence of membership death, with resultant loss of all rights, benefits and protection

of membership and this concern might have impelled their attendance at the meeting and their participation in the proceedings.

As said in the *Meads* case (p. 684) : " If all the members had been notified that the lodge was to take action upon the relator's case, instead of only eighteen, the whole membership might have attended and a majority of the votes have been cast in his favor. Members who might think that their attendance was unnecessary for the usual routine of business, might feel it their duty to attend a matter involving the rights of a fellow-member."

So here, if all the members had been properly and adequately notified that the association, as such, was to take action as to petitioners' expulsion and of their right as members to participate in the trial and vote for expulsion, instead of only some 300 attending out of a total membership of 18,000, a vastly greater number might have attended and participated (assuming they were informed of their right to participate and vote) and a majority of the votes cast in their favor sufficient to prevent a two-thirds vote for expulsion.

That no notice and certainly no proper notice as contemplated and required by law was given to the members of the association is fully shown and is obvious beyond all peradventure. The powers of the delegates were self-constituted and self-assumed. They do not arise from any act of the association itself as expressed in the constitution and by-laws. The power of expulsion as provided in section 7 of article II of the constitution and by-laws is lodged in the membership of the association, acting as a body — the membership at large and not in the delegates, as such.

So grave and important a power is not to be inferred as lodged in the delegates, certainly not from the general or dubious language of section 9 of article VII, especially when it is plainly provided that the power of expulsion shall be in the "members" of the association as declared by section 7 of article II.

To the membership body alone does it reserve the power of expulsion. Section 9 of article VII does not, in the remotest degree, authorize or vest delegates with the power of representation of members in matters relating to the expulsion of a member of the association; their power of representation is specifically confined and limited " as provided in the constitution and by-laws ", and, as hitherto mentioned, there is nothing contained in the constitution and by-laws which vests the delegates with any such power.

To uphold their action to try and expel the petitioners, both as to the giving of notice and purported jurisdiction to try and expel, would, at least, in the absence of clearest authority and full showing of right, violate, in my opinion, the plainest principles of justice.

The delegates were without authority or power to try and expel the petitioners and their action in that regard is invalid and void.

For the reasons stated the application is granted and the action and determination of the delegates is declared illegal and void and the expulsion of the petitioners is annulled, and the respondent association is directed to forthwith reinstate the petitioners to full membership in the association, with all and full rights and benefits as such as if they had never been expelled.

As to the respondent Carton, the petition is dismissed as he is not a proper or necessary party to this proceeding. The respondent association is a corporation and it alone is the proper and necessary party.

Settle order.